# RICHARD WAYNE PAROJINOG v. STATE OF MARYLAND

[No. 745, September Term, 1976.]

*Decided April 12, 1977.*

The cause was argued before THOMPSON, POWERS and MELVIN, JJ.

*Frank J. Coviello, Assigned Public Defender,* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Laurence D. Beck, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

On 23 May 1975 seven juvenile petitions were filed against the appellant Richard Wayne Parojinog in the District Court in Montgomery County sitting as a juvenile court. At that time appellant was 18 years old, having been born 20 September 1956. The petitions alleged the appellant to be "a delinquent child . . . in that he did commit" various acts described in separate counts in each of the petitions. In all, the petitions set forth 18 separate delinquent acts [1] allegedly committed by the appellant between 26 April 1974 and 19 September 1974, at times when he was 17 years old.

On the same date the petitions were filed, 23 May 1975, the State filed a "Petition for Waiver" asking the court to waive its exclusive juvenile jurisdiction over the appellant with respect to each of the alleged delinquent acts. On 24 March 1976, after at least three hearings, the juvenile judge signed an order waiving jurisdiction.

On 13 May 1976 a twenty-eight count indictment against the appellant was filed in the Circuit Court for Montgomery County charging the appellant with committing various crimes when he was 17 years old. It appears that many of the counts in the indictment coincide with counts in the juvenile petitions. [2]

On 23 June 1976, appellant filed a "Motion to Dismiss Indictment" on the grounds of double jeopardy and collateral estoppel. On 12 July 1976, after hearing, the motion was denied by Judge Ralph G. Shure. It is from the denial of the motion to dismiss the indictment that appellant

---

1. *i.e.* acts which would be a crime if committed by a person 18 years old or older. Code (1974), Courts Art. 3-801 (j), in effect at time petitions were filed. None of the acts were such as to deprive the court of its original exclusive juvenile jurisdiction.

2. We observe, however, that the indictment contains several other counts charging conspiracy, common law burglary, various forms of statutory burglary, and violations of Code Art. 27, § 139A (unlawful manufacture, assembly, use or possession of a "Molotov cocktail"), whereas it does not appear that any of the counts in the juvenile petitions alleged any acts which, if committed by an adult, would constitute those specific crimes. For the possible effect of trying the appellant for these crimes in a criminal court, absent a waiver order with respect to them, see In re Ingram, 15 Md. App. 356, 291 A. 2d 78 (1972) and Franklin v. State, 264 Md. 62, 285 A. 2d 616. That question, however, is not before us in this appeal.

has taken this appeal. He argues here, as he did before Judge Shure, that although the proceedings in the juvenile court were labeled waiver hearings they "amounted to an adjudicatory hearing" and that he "has, in effect, been tried, convicted and punished in the Juvenile Court" for the "same crimes" for which he now stands indicted.

Appellant bases his argument on the holding of the Supreme Court in *Breed v. Jones*, 421 U. S. 519, 95 S. Ct. 1779 (1975). In that case, the Court held that the prosecution of a juvenile in a criminal court *after* an adjudicatory proceeding in a juvenile court violated the Double Jeopardy Clause of the Fifth Amendment to the U. S. Constitution.

> "We believe it is simply too late in the day to conclude . . . that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years". 95 S. Ct. at 1785.

> \* \* \*

> "We hold that the prosecution of respondent in Superior Court, after an adjudicatory proceeding in Juvenile Court, violated the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment". 95 S. Ct. at 1791.

The State concedes that had there been an adjudicatory hearing in the juvenile court *Breed v. Jones* would require a dismissal of the indictment, but argues that the record does not show that an adjudicatory hearing was ever held. We agree with the State's argument. *Breed v. Jones* is therefore inapposite and appellant's reliance thereon is misplaced.

Our independent review of the proceedings before the juvenile court as reflected in the record before us convinces us that no adjudicatory hearing was held on the juvenile petitions; that appellant was not "put in jeopardy" in those

proceedings because their object was not "to determine whether [appellant] has committed acts that violate a criminal law", *Breed v. Jones, supra,* but rather their object was to determine the ultimate issue raised by the State's "Petition for Waiver". That ultimate issue was the fitness of the appellant for juvenile rehabilitative measures giving due consideration to the safety of the public. *In Re Flowers,* 13 Md. App. 414, 283 A. 2d 430 (1971).

Appellant concedes, as we have indicated, that the purpose of the juvenile proceedings was to determine the waiver question. He further concedes that no adjudication of delinquency was made by the juvenile judge. He further concedes that the waiver order is valid on its face and that he "is not attempting to go behind the waiver order of the Juvenile Court but is simply trying to establish that under the unusual circumstances surrounding the Juvenile Court proceedings, that an adjudicatory hearing was held at which he was punished, thereby precluding the State from trying him once again at the Circuit Court level".

Following the filing of the waiver petition, the waiver hearing in the juvenile court began on 30 July 1975. At that hearing, the judge heard testimony concerning the nature of the alleged delinquent acts charged and the appellant's involvement. The matter was continued until 10 September 1975 so that the judge could be furnished with a complete report on the appellant from the Department of Juvenile Services as well as an evaluation from the Maryland Children's Center. The judge made it clear that his purpose at this point was not treatment but to obtain "one package with as much information as possible to determine whether or not the Court *waives* its jurisdiction". (Emphasis added). He particularly wanted to know "what if any services are available within the juvenile system" for the appellant.

When the proceedings resumed on 10 September 1975, the judge noted at the outset that the case had been continued until that date for "final determination in waiver". The judge then noted that he had received the "staffing analysis" and recommendations from the Maryland Children's Center as well as the reports and recommendations of the

Department of Juvenile Services. Both the prosecuting attorney and counsel for the appellant presented oral arguments on the question of waiver. It is evident that the judge was concerned over the effect of the provisions of Code (1974, 1975 Cum. Supp.), § 3-807 (b) of the Courts and Judicial Proceedings Article. That section of our juvenile law became effective 1 July 1975 and provided:

"The [juvenile] court has exclusive original jurisdiction, but only for purposes of waiving it, over an adult who is alleged to have committed a delinquent act while a child." [3]

Because appellant was an "adult" charged with delinquent acts allegedly committed while a "child", the judge felt that if he did not waive jurisdiction the petitions would have to be dismissed.[4] On the other hand, if he waived jurisdiction, he would be doing so in the face of recommendations of the Department of Juvenile Services that a treatment program be instituted under that department's jurisdiction. He resolved the dilemma temporarily by "continuing the proceedings without a determination of waiver" for a period of six months, during which time appellant was "directed . . . to undergo a voluntary program of daily, full-time outpatient psychological and psychiatric therapy at a local hospital under the direction of the Department of Juvenile Services". He also "directed that the appellant make restitution in the sum of . . . $3,562.34 to the various persons who were victims of the crimes with which the appellant was charged in the Juvenile Court". We note, however, that the order signed by the judge following the 10 September hearing made no mention of restitution. The order reads as follows:

"The above-entitled proceedings having been presented to the Court this 10th day of September, 1975, *for the purpose of continuation of waiver*, and it being determined by the Court that the best

---

3. By Chapter 463, Acts 1976, effective 1 July 1976, § 3-807 (b) was amended by substituting "a person 21 years of age or older" for "an adult".

4. *See*, In Re Appeals Nos. 1022 and 1081, 278 Md. 174, (1976).

interests and welfare of Richard Wayne Parojinog, child, would be served by continuing the proceedings *without a determination of waiver,* and it being further determined that Richard Wayne Parojinog, child, be continued under a program of community supervision, It Is Thereupon;

ORDERED this 10th day of September, A.D., 1975, that Richard Wayne Parojinog, child, be continued under the jurisdiction of the Court in the care and custody of his parents under a program of community supervision to be provided by the Juvenile Services Administration, and It Is Further;

ORDERED that these proceedings be continued pending further hearing to be held on the 10th day of March, A.D., 1976, and It Is Further;

ORDERED that these proceedings be continued pending further reports and recommendations and further Orders of the Court." (Emphasis added.)

On 25 September 1975, however, a "Consent Agreement" was filed in the proceedings. By this document, signed by appellant and an assistant prosecutor, appellant "agree[d] to pay the above sums of money [totalling $3,562.34] to the above individuals [victims of the delinquent acts] in whatever amounts I can depending upon my financial ability to do so".

On 10 March 1976, another hearing was held, following which a waiver order was signed by the judge.[5]

The appellant does not argue the propriety of the 10 September order or the judge's "directions" in connection therewith — only that he was thereby "punished" for the acts with which he was charged in the juvenile petitions and that because "punishment" is only permitted after an adjudicatory hearing, the proceedings must be regarded as

---

**5.** The parties have stipulated that "the waiver hearing of March 10, 1976 ... is not applicable to the case presently before the Court of Special Appeals"; therefore, there is no transcript of that hearing in the record before us, nor does the record contain the waiver order itself.

adjudicatory in nature. The State argues that in ordering restitution and therapy, the judge was not imposing punishment but was merely acting pursuant to § 3-827 of the Courts Article which provides that "the court may make an appropriate order directing, restraining, or otherwise controlling the conduct of a person who is properly before the court, if . . . the court finds that the conduct . . . will assist in the rehabilitation of or is necessary for the welfare of the child . . .".

. In our view, for the purposes of this appeal, it is unnecessary to determine whether the court's action of 10 September resulted in "punishment", for even if it did, it does not follow that the preceding hearings were adjudicatory hearings. Clearly they were not. The fact that "punishment" may have followed the hearings does not convert them into adjudicatory proceedings. Absent an adjudicatory hearing "whose object [was] to determine whether [appellant] has committed acts that violate a criminal law" the appellant was not put in jeopardy so as to bar his trial on the pending indictments on the ground of double jeopardy. In *Price v. Georgia*, 398 U. S. 323, 326 (1970), the Supreme Court said:

> "In *United States v. Ball*, 163 U.S. 662, 669 (1896), this Court observed: 'The Constitution of the United States, in the Fifth Amendment, declares, 'nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb'. The prohibition is not against being twice punished, but against being twice *put* in jeopardy. . . .' (Emphasis added.) The 'twice put in jeopardy' language of the Constitution thus relates to a potential, *i.e.*, the risk that an accused for a second time will be convicted of the 'same offense' *for which he was initially tried*". (Emphasis added.)

Because the appellant has not been "initially tried" on the pending charges, the Double Jeopardy Clause affords him no grounds for dismissal of the indictment. If and when he is convicted of those charges will be time enough to consider

the legal effect, if any, of the "punishment" he claims to have already received upon any sentence that may result. *See, North Carolina v. Pearce*, 395 U. S. 711 (1969).

*Order appealed from affirmed.*
*Costs to be paid by appellant.*