# RICHARD WAYNE PAROJINOG *v.* STATE OF MARYLAND

[No. 63, September Term, 1977.]

*Decided April 4, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Arthur A. DeLano, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The issue in this criminal case is whether the State's prosecution of the defendant for arson and conspiracy to commit arson, following a juvenile proceeding based upon the same offenses, which juvenile proceeding resulted in an order for the defendant to pay restitution and to undergo therapy full-time for six months at a hospital, violates the prohibition against double jeopardy.

On May 23, 1975, seven juvenile petitions were filed against the defendant in the District Court of Maryland, Sixth District (Montgomery County), Juvenile Division, requesting that the

court assume jurisdiction over him. The defendant, then eighteen years old, was charged with several separate delinquent acts of arson, conspiracy to commit arson and malicious destruction of property allegedly occurring between April 26, 1974, and September 19, 1974, at a time when he was seventeen years old. In addition to the juvenile petitions, a "Petition for Waiver" was filed by the State's Attorney.

On July 30, 1975, the District Court, sitting as a juvenile court, heard evidence on the State's petition to waive juvenile jurisdiction pursuant to Maryland Code (1974, 1975 Cum. Supp.), § 3-817 of the Courts and Judicial Proceedings Article. The State's evidence, for the most part, consisted of testimony and documents describing in detail the criminal acts which were committed, showing that the defendant participated in those acts, and disclosing the reasons for his participation. At the conclusion of the State's evidence on July 30, the trial judge announced that before he could make a determination as to waiver pursuant to the statutory criteria enumerated in § 3-817 (d),[1] a mental and physical "work up" by the Juvenile Services Administration and an evaluation by the Maryland Children's Center would be needed.

On September 10, 1975, the hearing resumed. After considering the arguments of the State and defense counsel, as well as the evaluation report of the Maryland Children's Center on the waiver issue, the trial judge declined to render a decision on the waiver issue but, sua sponte, ordered the proceedings continued for six months, until March 10, 1976. He also directed the defendant to undergo a program of daily full-time therapy at a local hospital for six months under the supervision of the Juvenile Services Administration and to pay restitution in the amount of $3,562.34 to the alleged

---

1. Section 3-817 indicates that the factors of age, mental and physical condition, nature of the offense, the child's amenability to treatment in an institution, and public safety are to be considered in the determination of waiver.

victims.[2] Subsequently, a "consent agreement" was filed, specifying the particular restitution payment to each victim.

On March 10, 1976, a third hearing was held in juvenile court, and on March 24, 1976, the juvenile judge signed an order waiving juvenile jurisdiction. About two months later, a twenty-eight count indictment against the defendant was filed in the Circuit Court for Montgomery County, alleging the same criminal acts. Prior to trial, the defendant filed a motion to dismiss the indictment on the ground of double jeopardy, which was denied on July 12, 1976.

The defendant took an immediate appeal to the Court of Special Appeals, arguing that the court order of September 10, 1975, directing him to pay restitution and undergo full-time psychiatric therapy at a local hospital, was a de facto adjudication of his guilt and constituted punishment for the acts with which he was charged. Prosecution as an adult following these juvenile proceedings, the defendant argued, would place him in jeopardy a second time, in violation of the Fifth Amendment to the United States Constitution. The State, on the other hand, argued that none of the proceedings in the juvenile court involved an adjudication that the defendant committed the offenses alleged in the petition. The State further argued that the juvenile court had no

---

2. There is only a partial transcript of the hearing on September 10, 1975, "due to inaudibility of the recordings," according to the certification by an official court recorder of the District Court. The directives of the juvenile judge are not contained in the transcript but appear in a subsequent affidavit by the juvenile judge, which provides as follows:

"On September 10, 1975, I directed the appellant to undergo a voluntary program of daily, full-time outpatient psychological and psychiatric therapy at a local hospital under the direction of the Department of Juvenile Services. In addition, I directed that the appellant make restitution in the sum of Three Thousand Five Hundred and Sixty-two Dollars and Thirty-four Cents ($3,562.34) to the various persons who were victims of the crimes with which the appellant was charged in the Juvenile Court. I set forth these facts by way of an Affidavit due to them not appearing in the transcript of testimony on September 10, 1975."

Whether or not the juvenile judge, before ordering therapy and restitution on September 10, expressly made a finding that the defendant committed the alleged delinquent acts, cannot be ascertained from the transcript or the affidavit.

jurisdiction to make an adjudication and impose any disposition. The Court of Special Appeals affirmed the order of the circuit court, *Parojinog v. State,* 35 Md. App. 586, 371 A. 2d 695 (1977), and this Court thereafter granted the defendant's petition for a writ of certiorari.

The prohibition against double jeopardy, applicable in Maryland both as a common law principle and under the Fifth Amendment to the United States Constitution, prohibits successive prosecutions for the same offense as well as multiple punishment for the same offense. *Newton v. State,* 280 Md. 260, 263-264, 373 A. 2d 262 (1977), and cases there cited. Moreover, the Supreme Court has held that the federal constitutional guarantee against being twice placed in jeopardy is fully applicable to juvenile adjudicatory proceedings, *Breed v. Jones,* 421 U. S. 519, 95 S. Ct. 1779, 44 L.Ed.2d 346 (1975).

Before addressing the issue of whether the adult criminal prosecution of the defendant would constitute double jeopardy because of the juvenile court's directives on September 10, 1975, concerning restitution and therapy, it would be useful to review briefly some of the pertinent procedures under the Maryland statutory provisions relating to juvenile causes, Code (1974, 1977 Cum. Supp.), §§ 3-801 through 3-834 of the Courts and Judicial Proceedings Article. Section 3-812 provides, *inter alia,* for the filing of a petition alleging that a child is delinquent. It requires that such petition set forth in clear and simple language the alleged facts constituting the delinquency and the laws allegedly violated by the child. When a delinquency petition has been filed, the court, sitting as a juvenile court, has "exclusive original jurisdiction" over the child (§ 3-804). Child is defined to mean a person under the age of 18 years (§ 3-801 (d)), and, where a person is alleged to be delinquent, "the age of the person at the time the alleged delinquent act was committed controls the determination of jurisdiction" (§ 3-805 (a)). Once the juvenile court obtains jurisdiction, "that jurisdiction continues until that person reaches 21 years of age unless terminated sooner" (§ 3-806 (a)). One method for the termination of jurisdiction is, of course, waiver, and § 3-817

(d) sets forth the criteria to be considered by the juvenile court in determining whether to waive its exclusive jurisdiction.

Three distinct types of hearings by the juvenile court are provided for: a waiver hearing (§ 3-817); an adjudicatory hearing (§ 3-819); and a disposition hearing (§ 3-820). A waiver hearing is to be held prior to an adjudicatory hearing, and its purpose "is solely to determine whether the court should waive its jurisdiction" (§ 3-817 (b)). The issue in a waiver hearing is not whether the child is guilty of committing the delinquent act but whether he is an unfit subject for juvenile rehabilitative measures. For purposes of making this decision, "the court shall assume that the child committed the delinquent act alleged" (§ 3-817 (c)).

Unless jurisdiction has been waived, the court is to hold an adjudicatory hearing after the waiver hearing, the purpose of which "is solely to determine the merits of the allegations of the petition" (§ 3-819 (a)). While making it clear that a waiver hearing is to be "prior to an adjudicatory hearing" (§ 3-817 (b)), the statutory provisions specify no particular time interval between the waiver hearing and the adjudicatory hearing.[3] After the adjudicatory hearing, the juvenile court must hold a separate disposition hearing unless all parties waive their right to such a hearing, and the disposition hearing may be held on the same day as the adjudicatory hearing (§ 3-820 (a)). Included among the types of disposition which the court may make are to place the child under supervision in his own home or with others "upon terms the court deems appropriate" and to "commit the child to the custody . . . of the Juvenile Services Administration" (§ 3-820 (b)). In addition, where the court has found that a child has wilfully or maliciously damaged or destroyed the property of another, it may order the child to make restitution payments (§ 3-829 (e)).

Turning to the facts of the case before us, it is clear from the above-described statutory provisions that the juvenile

---

3. While setting forth no minimum time interval between a waiver hearing and an adjudicatory hearing, Maryland Rule 914 b (i) sets forth a maximum period of thirty days from the conclusion of the waiver hearing.

court acquired exclusive jurisdiction over the defendant on May 23, 1975, when juvenile petitions were filed alleging that the defendant committed delinquent acts when he was seventeen years old. This jurisdiction continued through September 10, 1975, when the court ordered that the defendant undergo daily full-time therapy at a hospital for six months under the jurisdiction of the Juvenile Services Administration and that he make restitution. It is also clear that these orders were dispositional in nature, and under the statutes required, as a precondition, an adjudication that the defendant had committed delinquent acts. Moreover, an order to make restitution necessarily involves a determination that the individual so ordered bears responsibility for the loss. While the record does not disclose whether or not the juvenile court expressly made an adjudication of the defendant's guilt, the court implicitly made an adjudication. Finally, there can be no doubt that the juvenile court erroneously exercised its jurisdiction under the statutory scheme by making an adjudication and disposition without first having decided the waiver issue.

On these facts, we believe that this case is within the Supreme Court's holding in *Breed v. Jones, supra,* 421 U. S. at 520, that the Fifth Amendment's Double Jeopardy Clause prohibits the prosecution of a person as an adult following juvenile proceedings based on the same offenses, where it was found that the person had violated the criminal law. In *Breed,* arising in California, a juvenile petition was filed against the defendant alleging that he had committed acts which, if committed by an adult, would amount to the crime of robbery. At the conclusion of an adjudicatory hearing, at which two prosecution witnesses testified, the juvenile court found that the allegations in the petition were true. The court then continued the proceedings for a dispositional hearing. At a hearing conducted about two weeks later, and before any disposition under the juvenile law, the court indicated its intention to find the defendant not amenable to the treatment program available through the juvenile court, and a week later the court ordered that he be prosecuted as an adult. Unlike the instant case, the juvenile court in *Breed* at no time

rendered dispositional orders prior to waiving jurisdiction. Thereafter, the defendant was tried and convicted of robbery in the criminal court. The United States Supreme Court held that the defendant was placed in jeopardy at the adjudicatory proceeding in the juvenile court, and that the subsequent criminal trial was a successive prosecution, placing him twice in jeopardy for the same offense, 421 U. S. at 528-531. The Court emphasized that a juvenile court decision regarding waiver or transfer of the defendant to an adult criminal court would have to be made before the adjudicatory hearing, 421 U. S. at 536-540.

To distinguish *Breed* from the instant case on the ground that the hearing on September 10, 1975, may have been labelled a "waiver" hearing instead of an "adjudicatory" hearing, with the purpose of a waiver hearing being different, would be to elevate form over substance. As Judge Levine stated for this Court in *Matter of Spalding,* 273 Md. 690, 703, 332 A. 2d 246 (1975), "it is clear that labels are not controlling in determining the applicability of the Due Process Clause to juvenile proceedings." While the hearing on September 10, 1975, may have started as a waiver hearing, at some stage during the proceedings on that date the juvenile court changed the nature of the hearing and *in fact* turned to adjudication and disposition. Whether expressly or implicitly, he adjudicated the defendant's guilt, apparently basing his adjudication upon the testimony of two prosecution witnesses and certain documentary evidence at the earlier hearing on July 30, 1975. Moreover, the juvenile court in this case went further than the juvenile court in *Breed,* for here the court actually entered dispositional orders. The present case, therefore, involves the multiple punishment aspect of the double jeopardy prohibition as well as successive prosecution.

The Supreme Court of Arizona reached a similar conclusion in *Coleman v. Superior Court in and for County of Pima,* 110 Ariz. 386, 519 P. 2d 851 (1974), when faced with facts comparable to those in the instant case. In *Coleman,* a juvenile was committed for psychiatric treatment following a waiver hearing but prior to any formal adjudication. The court held that the commitment of the child to the state hospital was in

lieu of criminal prosecution and constituted a de facto determination to treat the child as a juvenile delinquent, thus placing the child in jeopardy and precluding subsequent prosecution for the same offense. The court reasoned (519 P. 2d at 854):

> "A court should look past the form to the substance of an action especially in view of the informal nature of juvenile proceedings . . . . Having decided that the petitioner should be given special treatment, such treatment was made in lieu of criminal prosecution rather than in addition to it. Under the circumstances we conclude that the Superior Court made a de facto determination to treat the petitioner as a juvenile delinquent. Thus the petitioner was not only placed in jeopardy in the juvenile court but was in effect convicted and punished. Any attempt to try him as an adult would not only subject him to the harassment of an additional judicial proceeding but would subject him to the risk of being punished twice for the same offense. . . ."

*Cf. Garrison v. Jennings,* 529 P. 2d 536, 540 (Okla. Cr. 1974) (holding that a trial judge's determination that a boy was within the purview of the Juvenile Code, and commitment of the boy for psychiatric treatment for an extensive period, was a de facto determination of delinquency). *See also State v. Gibbs,* 94 Idaho 908, 500 P. 2d 209 (1972).

The principal argument made by the State in this Court is that, because of a particular statutory provision which was in effect only from July 1, 1975, until July 1, 1976, the juvenile court had no jurisdiction to do anything other than waive jurisdiction or dismiss the proceedings. The State relies on Ch. 554 of the Acts of 1975, which in pertinent part amended § 3-807 (b) of the Courts and Judicial Proceedings Article to provide that the juvenile court "has exclusive original jurisdiction, *but only for the purpose of waiving it,* over an adult [*i.e.,* a person over 18 years of age] who is alleged to have committed a delinquent act while a child." (Emphasis

supplied.) This provision was further amended by Ch. 463 of the Acts of 1976, which changed the word "adult" to "person 21 years of age or older." The State maintains that on September 10, 1975, the defendant was over 18 years of age, and therefore the juvenile court only had jurisdiction "for the purpose of waiving it." Since the court had no jurisdiction to make an adjudication and disposition, the argument continues, jeopardy could not attach.[4]

The fallacy in the State's argument is that the juvenile petitions in the present case were filed on May 23, 1975, whereas Ch. 554, restricting the juvenile court's jurisdiction, did not become law until July 1, 1975. It is the time the petition is filed, not the time of adjudication, which determines the jurisdiction of the juvenile court and the applicability of Ch. 554, *In re Appeals Nos. 1022 and 1081,* 278 Md. 174, 179-180, 359 A. 2d 556 (1976); *In re Appeal No. 1038,* 32 Md. App. 239, 243, 360 A. 2d 18 (1975). Once the juvenile court's jurisdiction attaches upon the filing of a petition, that jurisdiction continues until the defendant is 21 years of age unless the court terminates its jurisdiction sooner, § 3-806 (a) of the Courts and Judicial Proceedings Article. Consequently, the juvenile court was not divested by Ch. 554 of jurisdiction to make an adjudication and disposition regarding the defendant.

We hold, therefore, that the defendant was put in jeopardy by the action of the juvenile court on September 10, 1975. Prosecuting him as an adult for the same criminal acts would subject him to a successive prosecution and to the risk of multiple punishment, in violation of the federal constitutional prohibition against double jeopardy.[5] The defendant's motion

---

4. The premise for the State's argument is the principle "that before a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged." Grafton v. United States, 206 U. S. 333, 345, 27 S. Ct. 749, 751, 51 L. Ed. 1084 (1907). *See also* United States v. Ball, 163 U. S. 662, 669, 16 S. Ct. 1192, 1194, 41 L. Ed. 300 (1896). We shall assume for the purposes of this case that this principle is still viable and would apply to multiple punishment as well as successive prosecution.

5. Since the defendant in his brief and argument before us raised only the federal constitutional prohibition, we limit our decision to that ground. Thus we do not decide whether the result would be the same under the Maryland common law prohibition against double jeopardy.

to dismiss the indictment in the circuit court on the ground of double jeopardy should have been granted.

> *Judgment of the Court of Special Appeals reversed with directions to reverse the judgment of the Circuit Court for Montgomery County.*
> *Costs to be paid by Montgomery County.*