JAMES H. EISENHARDT *v.* ROSARIO J. PAPA ET UX.

[No. 1525, September Term, 1979.]

*Decided July 15, 1980.*

The cause was argued before MOYLAN and WILNER, JJ., and IRVING H. FISHER, Associate Judge of the District Court of Maryland for District 5, specially assigned.

*Emil Hirsch,* with whom was *David Freishtat* on the brief, for appellant.

*Bayard Z. Hochberg* for appellees.

WILNER, J., delivered the opinion of the Court.

We are asked here to resolve a conflict among two principals and four principles. The principles, each clear and well set out in the law, concern the finality, "reviewability," and revision of judgments. They are:

FIRST: A judgment entered by a court that had no "jurisdiction" to enter it is absolutely void. Such a judgment, said the Court in *Fooks' Executors v. Ghingher,* 172 Md. 612, 619 (1937), "may be attacked anywhere, at any time, by any person affected by it . . . ," it being but "a dead limb upon the judicial tree."

SECOND: After a judgment has become enrolled, a trial court is without authority to vacate or revise it except for fraud, mistake, or irregularity. This maxim is directly stated in Maryland Rule 625 a which, the Court said in *Eliason v. Comm'r of Personnel,* 230 Md. 56, 59 (1962), "embraces all the power the courts of this State have to revise and control enrolled judgments and decrees."

THIRD: A trial court has no authority to modify a judgment after that judgment has been affirmed on appeal, for that would involve modifying the ruling of a higher court. *See Buffin v. Hernandez,* 44 Md. App. 247 (1979), and cases cited therein.

FOURTH: A trial court's refusal to vacate an *unenrolled* judgment, rendered on the merits, is not ordinarily appealable. Three reasons have been cited for this: (1) under Maryland Rule 625 a, a trail court's revisory power prior to enrollment is purely a discretionary one that will not ordinarily be disturbed by an appellate court; (2) the proper way to test the correctness or validity of the court's action is to appeal from the judgment itself and not from a refusal to vacate it; and (3) to permit an appellant to challenge the judgment indirectly by appealing the court's refusal to vacate it would, in most cases, serve to emasculate the statutory requirement that appeals be noted within 30 days of the entry of judgment. See *Gold Dust Corp. v. Zabawa,* 159

Md. 664 (1930); *Tilghman v. Riggs National Bank,* 261 Md. 306 (1971); *Hardy v. Metts,* 282 Md. 1 (1978).[1] *Compare First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 333 (1974), dealing with the appealability of an order refusing to strike an *enrolled* decree.

We are required to consider and sort out these principles, and a few others, because of the unusual posture in which this case reaches us. This is an appeal from a refusal by the Circuit Court of Baltimore City to vacate an *unenrolled* amended decree (compare fourth principle), in which the record suggests that, in entering the amended decree, the court revised (in effect, annulled) a previously *enrolled* decree (i) in the absence of any showing of fraud, mistake, or irregularity (compare second principle) and (ii) after that decree had been affirmed by this Court on a direct appeal (compare third principle). On this basis, appellant contends that the court was without jurisdiction to enter the amended decree, that such decree is therefore absolutely void, and that it may properly be attacked on appeal from the trial court's refusal to vacate it (see first principle).

The genesis of this case was an action for specific performance filed by appellant on August 4, 1977, in the Circuit Court for Baltimore City. He alleged, and proved, that appellees had agreed to sell him, on an installment basis, a parcel of land in Baltimore City of which he had been a lessee and on which he conducted a used car business. The bone of contention between the parties at the time concerned (1) a collateral debt owed to appellees by appellant, evidenced by two confessed judgment notes, which appellees

---

1. Ordinarily, an order would not be considered nonappealable simply because it is discretionary, there always being open the question of whether the court abused its discretion. Yet, in *Tilghman,* which involved an appeal from an order denying a motion to strike an unenrolled decree, the Court actually dismissed the appeal rather than affirm the order. This approach is not inconsistent with what the Court said in *Gold Dust Corp. See also Suitland Dev. v. Merchants Mort.,* 254 Md. 43 (1969). It would appear that the major rationale for this approach is one of public policy. As the Court said initially in *Lefever v. Lefever,* 6 Md. 472, 478 (1855), and again in *Gold Dust Corp.,* 159 Md. at 667: "If parties could open decrees and judgments, on appeal, in this indirect way, it would virtually amount to a repeal of the laws limiting the time within which appeals should be taken, and would lead to interminable litigation."

insisted be paid before they delivered a deed to the property, and (2) appellant's claim to a share of certain insurance proceeds received by appellees by reason of fire damage to the property, which share he sought to deduct from the unpaid purchase price.

These matters came before the court in its consideration of appellant's bill for specific performance and money damages.[2] After trial, the court determined that appellant was entitled to specific performance; and, on February 22, 1978, it issued a decree (1) ordering appellees to give to appellant a deed to the property upon payment of the unpaid purchase price of $20,103, (2) directing that all settlement expenses be borne by appellant, (3) ordering that taxes and other public charges be adjusted as of August 30, 1976, and be borne by appellant, and (4) dismissing appellant's claim for monetary losses, without providing for any apportionment of the fire insurance proceeds.

Appellees appealed from that decree, primarily on the ground that the chancellor had failed to give proper account to appellant's default under the collateral confessed judgment notes in ordering specific performance. Appellant did not cross-appeal. In an unreported *per curiam* Opinion filed January 19, 1979, this Court affirmed the decree *(Papa, et ux. v. Eisenhardt,* No. 290, Sept. Term, 1978). Our mandate (following denial of a motion for reconsideration) was issued on February 21, 1979.

On June 4, 1979, appellees filed a petition with the Circuit Court to modify the decree. They alleged, in essence, that following the mandate of this Court, they had attempted to arrange for settlement of the property in accordance with the decree of specific performance, and were ready, willing, and able at all times thereafter to conclude settlement in accordance with that decree, but that appellant refused to

---

2. Appellant asked the court to specifically enforce the agreement (*i.e.,* to require or provide for a conveyance of title) and to "fix and determine the monetary losses sustained by the Plaintiff." Appellant did not specify in his bill any particular damages or losses but averred that they arose in the operation of his used car business conducted on the property. At trial, he made a specific claim to a share of the insurance proceeds as part of the monetary losses for which he sought recovery.

conclude settlement except upon extraneous and unacceptable conditions.[3] As a result, they asked the court to modify the decree by eliminating therefrom the requirement that appellees deed the property to appellant — in effect, to negate entirely the order for specific performance. No claim was made (and no evidence was offered) that the decree had been entered by fraud, mistake, or irregularity. Indeed, such a claim would likely have been foreclosed by our affirmance of the decree. *See Buffin v. Hernandez, supra,* 44 Md. App. 247, and the cases cited therein.

In response to this petition by appellees, appellant filed his own petition for modification of the decree. Alleging that his claim to a share of the insurance proceeds was not foreclosed by the decree, but was agreed to by appellees, that, subsequent to the decree appellees had removed about $8,000 worth of electrical fixtures from the property, and that the underlying purchase agreement was really a land installment contract, he asked that the court modify the decree by (1) appointing an auditor to determine the proper apportionment of the insurance proceeds, (2) requiring appellees to return the fixtures or allowing a deduction for their value, (3) amending the clause requiring an adjustment of expenses as of August 30, 1976, so as to require appellees to pay the real estate taxes after that date, and (4) requiring appellees to comply with their obligations "under Title 10 of the Real Property Article" (without specifying what those obligations were or which, if any, had not been satisfied).

Upon these cross-petitions (and answers to them) the court conducted a hearing at which certain documentary evidence was admitted by stipulation. That evidence, mostly

---

**3.** The two conditions insisted upon by appellant were that the deed include his wife as a co-grantee and that he receive a deduction from the $20,103 unpaid purchase price for his share of the fire insurance proceeds. Appellees resisted these demands on the basis that (1) as to the inclusion of appellant's wife, this was simply a ploy to prevent the judgments obtained by appellees on the two confessed judgment notes from becoming a lien on the realty, and was not authorized by the decree, which ordered a deed to appellant and said nothing about his wife; and (2) as to the insurance proceeds, that issue was resolved when appellant's claim for monetary damages was dismissed.

correspondence between counsel, essentially illustrates the basic disagreement between the parties noted above — appellees' efforts to conclude settlement in strict accord with the decree and appellant's insistence on a credit for part of the insurance proceeds and that his wife be joined in a deed as a co-grantee. At the conclusion of the hearing, the court announced that, instead of interpreting and enforcing the decree by making clear what the obligations of the parties were under it (*see* Maryland Rules 681 and 685), it would grant appellees' petition for modification, striking from the decree their obligation to convey the property, and would deny appellant's cross-petition. The court pointed out that, as the matters complained of by appellant occurred *prior* to the decree, the court was powerless to modify it on their account; but that it was not so impotent with respect to the post-decretal matters raised in appellees' petition. An amended decree, effectuating these decisions, was entered on October 15, 1979.

A week later, counsel for appellant withdrew his appearance. On October 31, 1979, appellant filed what appears to be a professionally drawn but nonetheless *pro se* motion to strike the amended decree. Among a variety of alleged improprieties (lack of due process, failure to state grounds, gross injustice, fraud, conspiracy), appellant claimed:

> "THE AMENDED DECREE dated October 15, 1979, is void in that this Court lacks the power and authority to enroll such amended decree in that it materially extinguishes or strikes the Decree dated February 22, 1978 in direct contravention to the mandate of the Court of Appeals in *Hughes v. Beltway Homes Inc.* 276 Md. 382, 347 A.2d 837 (1975). The language of *Rule 625* embraces all of the power the Court has to revise and control the Decree dated February 22, 1978, *Meyer v. Gyro Transp. Sys.* 263 Md. 518, 282 A.2d 608 (1971). By reason of each and every paragraph herein, plaintiff's rights under the Decree dated February 22, 1978 is 'res judicata' and this Court has abused

and usurped its power and authority with the entry of the AMENDED DECREE dated October 15, 1979." (Emphasis in the original.)

In the next paragraph, in the context of complaining about the court's failure to state the grounds for its decision (Maryland Rule 18b), appellant stated:

"This failure to make a statement of grounds for its decision is an 'act of discretion.' This Court lacks any discretionary power to strike or materially extinguish the Decree dated February 22, 1978, *Travelers Indem. Co. v. Rosedale Passenger Lines,* 450 F.2d 975 (4th Cir. 1971); *Ventresca v. Weaver Bros.* 266 Md. 398, 292 A.2d 656 (1972)."

These were the only complaints of a jurisdictional nature made by appellant in his motion to strike.[4]

On November 5, 1979, the court, finding "no basis upon which [the motion] should be granted," denied it. The next sequence of events, which accounts for the peculiar posture of the appeal now before us, was as follows: (1) On November 15, 1979, appellant noted an appeal from the (October 15) amended decree; (2) on December 3, 1979, he noted an appeal from the court's denial of his motion to strike the amended decree; (3) on December 31, 1979, pursuant to appellees' motion and Maryland Rule 1013, the court struck appellant's November 15 order for appeal as not having been timely filed; and (4) on January 24, 1980, appellant noted an appeal from the court's December 31 order striking his first order for appeal.

The record before us in this case thus shows three orders for appeal — the November 15 appeal from the amended decree, which was subsequently stricken by the trial court; the December 3 appeal from the denial of appellant's motion to strike the amended decree; and the January 24 appeal from the trial court's order striking the

---

4. The cases cited by appellant in these passages all involved Maryland Rule 625a and concluded that once a judgment or equity decree became enrolled, it was subject to revision or vacation by the trial court only for fraud, mistake, or irregularity.

November 15 appeal. Although the last of these appeals — that of January 24 — was timely filed and was properly included in the record transmitted by the clerk of the Circuit Court,[5] and although the court's Memorandum Opinion and Order striking the November 15 appeal is included in the Joint Record Extract pursuant to Maryland Rule 1028, appellant has not seen fit to include in his brief any mention of or argument concerning that appeal. We therefore consider that he has abandoned any complaint about that action of the court (*see* Maryland Rule 1031) and, pursuant to Maryland Rule 1035 a. 2 and b. 7, shall, on our own motion, dismiss that appeal. We hasten to add that the November 15 order for appeal shows on its face that it was not timely filed, and we therefore would have dismissed the appeal under Maryland Rule 1035 a. 2 and b. 3 had the lower court not acted under Maryland Rule 1013.

As a result of this action, we are left only with the December 3 appeal from the order denying appellant's motion to strike the amended decree. This, as we initially noted, is ordinarily a decision that is purely discretionary and has been held to be nonappealable. Whatever our inclination might be in considering a direct appeal from the amended decree itself, unless we conclude that it is absolutely void, having been entered in a jurisdictional vacuum, it is not our function, or perhaps even our power, to disturb the trial court's refusal to vacate it.

In this regard, we must look carefully at the claims made by appellant. As we have already observed, the jurisdictional deficiency raised in the lower court with respect to the amended decree was based solely upon Maryland Rule 625 a — that in the absence of fraud, mistake, or irregularity, the court had no authority to amend the decree (this being, of course, entirely inconsistent with his own petition to amend the decree). In his brief before us, however, he makes no mention whatever of this

---

**5.** *See* Maryland Rule 1026a.1: "Unless otherwise ordered by the lower court pursuant to section f [d] of this Rule, all the original papers filed in the action in the lower court, except such papers as the parties may stipulate shall be omitted, shall constitute the record on appeal. . . ."

defense. Instead, he asserts that court's lack of jurisdiction arose not under Maryland Rule 625 a but rather because the original decree had been affirmed by this court. The issue before *us,* he says, "is controlled by this Court's recent decision in *Buffin v. Hernandez,* 44 Md. App. 247 (1979)," which dealt with the trial court's authority to revise a judgment, following affirmance on appeal, in a manner inconsistent with the mandate of affirmance by the appellate court.

Because both of these grounds are jurisdictionally based, it is incumbent upon us to consider them both. Maryland Rule 1085; [6] *Stacy v. Burke,* 259 Md. 390, 403 (1970); *Webb v. Oxley,* 226 Md. 339, 343 (1961); *Moore v. State,* 15 Md. App. 396, *cert. den.* 266 Md. 740 (1972).

These grounds are, of course, somewhat related. Both question not the substance of what the court did (*i.e.,* the *contents* of the amended decree), but rather its authority to pass an amended decree in the first instance. In this regard, the essential issue as to both lines of attack is whether the court actually exceeded its jurisdiction — *i.e.,* had no underlying inherent power to do what it did — or whether it had the requisite jurisdiction but merely exercised it improperly.

The Court of Appeals first noted this distinction in *Fooks' Executors v. Ghingher, supra,* 172 Md. 612. The genesis of that case was a proceeding in equity by the receiver of a bank to recover from the bank's stockholders amounts equivalent to the full par value of their respective shares of stock. Some of the stockholders, by demurrer, contended that equity had no jurisdiction over such a proceeding, in that there was an adequate remedy at law; and, in *Allender v. Ghingher,* 170 Md. 156 (1936), the Court of Appeals, reversing the ruling of the trial court, agreed with them. Other stockholders, also sued in equity, declined to raise the "jurisdictional" defense, and decrees on the merits were taken against them, these decrees being unaffected by the

---

**6.** Although the Rule generally limits our review to points "tried and decided by the lower court," it also provides that "a question as to the jurisdiction of the lower court may be raised and decided in this Court whether or not raised and decided in the lower court."

favorable result in *Allender*. Nearly three years later, those stockholders moved in the lower court to strike the decrees on the ground, sustained by the Court of Appeals in *Allender,* that the court had no jurisdiction to enter them. The lower court dismissed the petition.

Conceding that the decree of a court lacking the jurisdiction to enter it is void and subject to attack at any time, the Court of Appeals nevertheless affirmed, observing at p. 624 (of 172 Md.) that "[t]here is a wide distinction between the lack of jurisdiction to decide a given case, and the improper or irregular exercise of a power which, *while within the general jurisdiction of the court, under its established practice, is not applicable to the facts in respect to which it is exerted."* (Emphasis supplied.) In a similar vein, the Court noted at p. 622 that the court's "jurisdiction" may refer to its jurisdiction "to try the particular case or to its jurisdiction of the class of cases within which the particular case falls." Which it is, the Court said (p. 623),

> "can only be ascertained from an examination of the subject-matter of the proceeding, and the law which prescribes the forum in which a proceeding to enforce rights incidental to that kind of subject-matter must be tried. *So that, while it may appear on the face of the proceedings that through lack of appropriate allegations a court had no power to enter a particular decree, nevertheless, if it had jurisdiction of the class of cases to which that in which the decree was entered belonged, its decree would not be void, but voidable."* (Emphasis supplied.)

Although these concepts were applied in *Fooks' Executors* in the context of distinguishing between jurisdiction generally and what the Court referred to as "equity jurisdiction" *(see also Moore v. McAllister,* 216 Md. 497 (1958), and *Wells v. Price,* 183 Md. 443 (1944)), they have been given similar application in other contexts as well.

In a series of cases beginning with *Parojinog v. State,* 282 Md. 256 (1978), the Court drew a similar distinction in the

context of a double jeopardy issue. In *Block v. State,* 286 Md. 266 (1979), the Court dealt with a situation in which the trial court (the District Court) entered a verdict of guilty following the defendant's trial but withheld the imposition of sentence, later struck that verdict and entered a verdict of not guilty, and then struck that verdict and awarded the defendant a new trial. The State defended against a motion to dismiss on double jeopardy grounds on the premise that the initial "revision" — the entry of the not guilty verdict — was a nullity. Under the circumstances of the case, the State argued, the court had no revisory power over the first verdict — that the action taken was in violation of Maryland Rule of Procedure 770, which established and limited the court's revisory power. Relying in part on *Parojinog,* which involved a defective proceeding by a juvenile court, the Court concluded, however, at p. 273-74, that "the fact that the court may not have been authorized under the rules to render the verdict does not make it void for double jeopardy purposes. The cases make it clear that an improper or defective exercise of jurisdiction does not deprive an acquittal of its finality."

In a similar vein was *Parks v. State,* 287 Md. 11 (1980), dealing with a judgment of conviction rendered in clear violation of the Intrastate Detainer Act. Md. Ann. Code art. 27, § 616S (e) provides that if an indictment subject to the Act is not tried within 120 days of a request for trial, "the court no longer has jurisdiction, and the untried indictment . . . has no further force or effect." Notwithstanding this provision, the Court concluded that a conviction following a trial occurring after the 120-day period was only voidable as an improper *exercise* of jurisdiction and not a complete nullity. It stated: 287 Md. at 19:

> "[I]t is clear that the trial court at all times had jurisdiction over both the defendant and the subject matter. The expiration of the 120 day period in the statute affected neither of these grounds of jurisdiction. The statute only impaired the court's authority to exercise that jurisdiction."

In the most recent of the cases involving criminal proceedings, *Pulley v. State,* 287 Md. 406 (1980), and *Stewart*

*v. State,* 287 Md. 524 (1980), the Court synthesized the concepts announced in *Fooks' Executors* and the other civil cases with those applied in the double jeopardy context. Among the issues considered in *Pulley* was whether the trial court had lost its "jurisdiction" to proceed with trial (the fourth) while the defendant's interlocutory appeal on double jeopardy grounds was pending in this Court. Noting that, in general, a trial court does suffer a "lack of jurisdiction" or "suspension of authority" pending an appeal, the Court concluded that this loss or suspension was not one of "fundamental jurisdiction" sufficient to render its judgment void. This "fundamental jurisdiction," the Court said, quoting in part from *Cooper v. Reynolds' Lessee,* 77 U.S. 308 (1870) (Slip Opinion, p. 12), "is the power to act with regard to a subject matter which 'is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.' " Similarly, in *Stewart,* the Court concluded that the circuit court did not lose fundamental criminal jurisdiction to try a juvenile following a waiver of juvenile court jurisdiction during the pendency of an appeal from that waiver order.

When we consider the framework of the issue before us in the light of these principles, and these holdings, it becomes evident that even if the Circuit Court erred in passing the amended decree, even if that act was unauthorized and in violation of Maryland Rule 625a, there was no lack of basic, fundamental subject matter jurisdiction; and thus, at best (or worst), the amended decree would be voidable and not void.

Maryland Rule 625 a *permits* decrees to be revised after 30 days; it authorizes trial courts to take such action. What it limits is not the *power* to revise but the *grounds* upon which the decree may be revised — the circumstances under which the power may properly be exercised. If there is shown to be fraud, mistake, or irregularity (plus due diligence in seeking the revision), there is no doubt about the court's fundamental power/jurisdiction to consider and grant a motion to revise an enrolled judgment or decree. When the

court acts in the absence of those circumstances, therefore, what it is doing is improperly *exercising* that fundamental jurisdiction to revise; it is exercising its jurisdiction in an unauthorized and inappropriate manner, as the equity court did in *Fooks' Executors,* as the District Court did in *Block,* as the Circuit Court (criminal) did in *Parks. See First Federated Com. Tr. v. Comm'r, supra,* 272 Md. 329, 334, *et seq.* In such a case, its action is subject to reversal upon a timely filed and properly perfected direct appeal from that action. The action is thus voidable by an appellate court. But, because there is no lack of fundamental jurisdiction, the action is not void; and its validity or correctness is therefore not subject to our review on appeal from an order declining to undo it.

A similar result obtains with respect to the second ground raised by appellant — that based on *Buffin v. Hernandez, supra* — and for similar reasons.

*Buffin,* and the decisions of the Court of Appeals on which it relied, involved attempts by a trial court (or attempts to induce a trial court) to modify a judgment that had been ruled upon on appeal, in a manner that was inconsistent with the appellate court mandate, *by reason of matters that could (or should) have been considered and determined prior to or in the course of the appeal. See, for example, Korotki v. Springer,* 218 Md. 191 (1958), and *Rent-A-Car Co. v. Fire Ins. Co.,* 166 Md. 447 (1934), where, after affirmance or remand by the appellate court, an attempt was made to have the judgment stricken on the ground that it was procured by fraud; and *Buffin* itself, where, after affirmance on appeal, the trial court attempted to modify the judgment to recognize the claim of a subrogee. Such authority, we said, does not exist. "A trial court simply does not have jurisdiction to modify, in effect, the ruling of a higher court." 44 Md. App. at 255.

Here, again, however, the word (and concept of) "jurisdiction" must be viewed in a proper context. Many types of equity decrees, continuing in nature, are clearly subject to modification after appellate review and

affirmance. Decrees entered in domestic cases — custody, spousal and child support orders — are an example, as are injunctions. The *power* to modify is present; it is the *exercise* of that power that is limited. Judgments and decrees of a particular type — that have been through a particular procedure — may not be modified, this being due not to a lack of fundamental power in the trial court or to anything inherent in the decree itself, but rather to the supervening action of a superior tribunal with respect to that particular decree. In that situation, and for that reason, the power may not be exercised; and if the court wrongfully does exercise the power, its action is merely voidable on a direct appeal. *Compare Pamelin Industries v. Sheen-U.S.A., Inc.,* 600 P.2d 651 (Wash. App. 1979); *Jordon v. Gilligan,* 500 F.2d 701 (6th Cir. 1974), *cert. den.* 421 U.S. 991 (1975).[7]

We thus conclude that the amended decree is not void but, if improperly entered, merely voidable. Because it is not void, we shall not consider its validity or correctness in an appeal from a refusal to vacate the decree. *Tilghman v. Riggs National Bank, supra,* 261 Md. 306.

> *Appeals dismissed; appellant to pay the costs.*

---

7. *Jordon* involved a clear issue of fundamental jurisdiction — the power of a Federal Court under the Eleventh Amendment to enter a money judgment against a State. We express no comment with respect to *Pamelin Industries.*