Kelly Patrick **HARTUNG**, Appellant,

v.

Donald **OMODT**, Appellee.

No. 82–1109.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1982.

Decided Sept. 8, 1982.

William R. Kennedy, Hennepin County Public Defender, Franklin J. Knoll, Asst. Public Defender, Minneapolis, Minn., for appellant.

Thomas L. Johnson, Hennepin County Atty., Thomas A. Weist, Asst. Hennepin County Atty., Minneapolis, Minn., for appellee.

Before ROSS and McMILLIAN, Circuit Judges, and HARRIS,* Senior District Judge.

McMILLIAN, Circuit Judge.

Kelly Patrick Hartung appeals from a final judgment entered in the District Court[1] for the District of Minnesota denying his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For reversal Hartung argues that the district court erred in finding that (1) Hartung's placement in a juvenile treatment center did not constitute an adjudication such that jeopardy would attach, thereby barring subsequent certification for adult prosecution; (2) Hartung waived any double jeopardy claims that might have arisen from his placement in the juvenile treatment center; and (3) the placement and waiver did not constitute an enforceable bargain barring subsequent adult prosecution.[2] For the reasons discussed below, we affirm the district court.

---

* The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota. The petition had been referred to the federal magistrate (Hon. Floyd E. Boline) for a report and recommendation. The magistrate resolved the allegations adversely to Hartung. The district court adopted the report and recommendation.

2. Hartung also raised various due process claims relating to the voluntariness of a confession he made to authorities shortly after his arrest and to evidence concerning his conduct after the first reference hearing which was admitted at the second reference hearing. The district court dismissed those issues without prejudice based in part on consideration of federalism and comity.

   On March 4, 1982, subsequent to the district court's decision, Hartung pled guilty to murder in the second degree. The guilty plea bars Hartung's challenges to the voluntariness of his confession, *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and to the evidence admitted at the second refer-

The relevant facts are as follows. On May 12, 1978, a petition was filed in the Hennepin County Juvenile Court (juvenile court) alleging that Hartung, then seventeen years of age, was involved in the commission of first degree murder. On that same date, the State of Minnesota (state) moved for an order referring Hartung for prosecution as an adult pursuant to Minn. Stat.Ann. § 260.125.[3] On October 10, 1978, after a referral hearing, the juvenile court granted the state's motion. During the course of the hearing, the juvenile court suppressed an incriminating statement made by Hartung to the authorities after his arrest.

Subsequently, Hartung's counsel filed a motion with the juvenile court requesting that the October 10 order of reference be stayed indefinitely for purposes of allowing Hartung to appeal the order and requesting that Hartung be placed in a juvenile correction treatment center during the pendency of the appeal. A hearing was held and on October 26, 1978, the juvenile court granted the motion on the following conditions:

(a) The child [Hartung] will accept and be accepted by Nexus [a community juvenile treatment center] ... until released by the court as rehabilitated;

(b) The child waives his rights (a) to a speedy trial, (b) to claim this placement as a disposition in the event of subsequent referral to the adult system, and (c) accept the findings of a Morrissey-style hearing as to whether he has violated any of the terms of this stay.

*Hartung v. Omodt*, No. 4–81–331 (D.Minn. Nov. 18, 1981), Petition for Writ of Habeas Corpus, Exhibit C. On October 31, 1978, Hartung and his counsel accepted the conditions of the stay and both signed a form expressly waiving Hartung's rights to a speedy trial and to claim that the stay order and his placement in Nexus constituted a disposition for double jeopardy purposes.

On appeal the Minnesota Supreme Court reversed and remanded the October 10th order of reference holding that the juvenile court had erred in (1) applying the wrong criteria in determining whether Hartung should be certified as an adult, *In re Welfare of K. P. H.*, 289 N.W.2d 722, 725 (Minn. 1980); (2) staying the order of reference, *id.*; and (3) suppressing Hartung's incriminating statement, *id.* at 724. While the appeal was pending Hartung absconded from Nexus and stole an automobile which resulted in a felony conviction and a term in the workhouse.

On remand the juvenile court conducted a supplementary reference hearing limited to the issue of Hartung's present dangerousness and again certified Hartung for adult prosecution. Hartung appealed the second reference order to the Minnesota Supreme Court alleging that the juvenile court's placement of him in Nexus as a condition of the stay of the October 10 reference order constituted a *de facto* adjudication and disposition causing jeopardy to attach, thereby barring subsequent prosecution as an adult.[4] The court rejected the arguments holding that Hartung had validly waived the double jeopardy claim, *In re Welfare of Hartung*, 304 N.W.2d 621, 623 (Minn.1981).

Hartung then filed the present petition for habeas corpus alleging that the juvenile court had implicitly made an adjudication

---

ence hearing. The only claim that has not been barred and which may, therefore, be considered by this court is Hartung's double jeopardy claim. *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam).

3. Minn.Stat.Ann. § 260.125(2)(d), provides in relevant part: "[t]he juvenile court may order a reference only if ... [t]he court finds that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts."

4. Hartung also alleged that the juvenile court erred in considering his felony conviction for unauthorized use of an automobile on the issue of his present dangerousness. Hartung's theory was that the juvenile court should have conducted a "reconstructed" reference hearing with the only new evidence admitted being his incriminating statement which was erroneously excluded from the first reference hearing. The Minnesota Supreme Court rejected this argument holding that the juvenile court properly admitted Hartung's subsequent conduct into evidence. *In re Welfare of Hartung*, 304 N.W.2d 621, 623 (Minn.1981).

of juvenile delinquency in its order of October 26, 1978, as evidenced by the fact that he was to remain in the Nexus program "until released by the court as rehabilitated" and that such adjudication placed him in jeopardy and barred subsequent prosecution as an adult under *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (*Breed*). Hartung further alleged that the Minnesota Supreme Court erred in holding that his waiver was valid. Hartung argues that it was not voluntary because he was faced with the choice of waiving the double jeopardy claim or facing immediate prosecution as an adult.

The district court rejected the arguments based on its findings that Hartung's reference hearing, unlike the proceeding in *Breed*, was not an adjudicatory hearing to determine whether Hartung had committed the crime charged, but rather only determined the propriety of prosecuting Hartung as an adult. The district court noted that facts of Hartung's alleged crime were considered at the reference hearing but also noted that, under *Breed*, states may, as a prerequisite to the transfer of a juvenile, require substantial evidence that the juvenile committed the offense charged so long as the showing is not made in an adjudicatory proceeding. *Hartung v. Omodt*, slip op. at 7. Alternatively, the district court found that even if jeopardy had attached, Hartung had waived his right to claim that the stay order and placement constituted a disposition such that jeopardy would attach.

■ On appeal Hartung argues that the district court erroneously distinguished *Breed* on the basis that the juvenile court in the present case did not make a formal statement of adjudication. Hartung again contends that the condition of the stay placing him in Nexus "until released by the court as rehabilitated" required, as a precondition, an adjudication that Hartung had committed delinquent acts, thereby barring subsequent prosecution as an adult under *Breed*.

There is no merit to this argument. In *Breed* the Supreme Court held that an individual is put in jeopardy at an adjudicatory hearing in juvenile court when "the object

is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years." 421 U.S. at 529, 95 S.Ct. at 1785. Such is not the case here. The juvenile court, as required under *Breed*, 421 U.S. at 536–40, 95 S.Ct. at 1789–91, held a reference hearing and determined that Hartung was not amenable to treatment through the facilities of the juvenile court. There are no allegations that the reference hearing was dispositional in nature or that jeopardy attached at that time.

Subsequently, the juvenile court stayed the October 10 reference order and placed Hartung in the Nexus treatment program at Hartung's request and the court agreed to do this only after Hartung expressly waived any claim that the stayed order and his placement in Nexus constituted a disposition for double jeopardy purposes. Hartung made a voluntary choice to appeal the October 10th order and to remain in a juvenile rather than an adult facility during the pendency of the appeal. Under these circumstances we conclude that jeopardy did not attach. "[T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *United States v. Scott*, 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978).

Hartung's reliance on *Parojinog v. State*, 282 Md. 256, 384 A.2d 86 (1978), is also misplaced. In that case the juvenile court declined to render a decision on the reference issue but, sua sponte, ordered the proceedings continued for six months. The court also directed the juvenile to undergo a program of full-time therapy at a local hospital for six months under the supervision of the Juvenile Services Administration and to pay restitution in the amount of $3,562.34 to the alleged arson victims. Under those circumstances the Maryland Court of Appeals wisely concluded that *Breed* controlled and jeopardy had attached. In so holding the court reasoned, "an order to make restitution necessarily involves a determination that the individual so ordered

bears responsibility for the loss.... [T]here can be no doubt that the juvenile court erroneously exercised its jurisdiction under the statutory scheme by making an adjudication and disposition without first having decided the waiver issue." *Parojinog v. State*, 384 A.2d at 89. In contrast, in the present case the juvenile court correctly exercised its jurisdiction and decided the reference issue.

■ Alternatively, we conclude that the express waiver signed by Hartung and his counsel was a valid waiver of the double jeopardy claim now raised. Hartung argues that the waiver was invalid because it was not voluntarily made under the reasoning in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1975). In support Hartung reasons that he was forced to choose between waiving his double jeopardy claim and the prospect of a first degree murder trial.

There is no merit to this argument. Initially we note that we disagree with Hartung's characterization of the choices available to him when he signed the waiver. Hartung faced being subjected to a first degree murder trial on October 10, 1978, the date the juvenile court referred him for adult prosecution. The only way Hartung could avoid prosecution as an adult was to be successful on appeal. The choices available to Hartung when he waived his double jeopardy claim were to be incarcerated in an adult facility during the pendency of his appeal or execute the waiver and remain in a juvenile facility during the pendency of his appeal. Hartung's choice of placement had no bearing on whether he would face adult prosecution. More importantly, under Minnesota law an order of reference is an appealable order and may be stayed by the reviewing court. *See* Minn.Stat.Ann. § 260.291; *In re Welfare of Sweats*, 293 N.W.2d 67, 70 (Minn.1980); *In re Welfare of I. Q. S.*, 309 Minn. 79, 244 N.W.2d 30, 35 (Minn.1976). Therefore, Hartung could have refused the conditional order of stay from the juvenile court without jeopardizing his right to appeal or his ability to seek a stay from the Minnesota Supreme Court. Hartung, unlike the defendant in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, was not required to choose between his enjoyment of two rights. At the time Hartung signed the waiver he had no right to a stay of proceedings. He voluntarily waived his double jeopardy claim to obtain the stay and placement in a juvenile rather than an adult facility pending his appeal. Hartung cannot now claim that his decision to execute the waiver form was involuntary. *See Estelle v. Williams*, 425 U.S. 501, 512–13, 96 S.Ct. 1691, 1696–1697, 48 L.Ed.2d 126 (1976).

Hartung also stresses that the terms of the stay were not the terms he requested. However, even if this were true, Hartung still had the option of refusing the stay without jeopardizing his right to appeal or his ability to seek a stay from the Minnesota Supreme Court.

■ The final argument raised by Hartung in his petition for habeas corpus was that his waiver of the double jeopardy claim in exchange for the juvenile court's stay of the order of reference constituted an enforceable bargain under which Hartung had the right to demand specific performance. The district court rejected the argument based on its findings that there was no enforceable agreement and, alternatively, assuming the existence of an enforceable agreement, it was breached by Hartung's conviction for unauthorized use of an automobile. We agree with the district court.

Hartung's basic contention throughout the habeas proceedings has been that he sought a stay and placement in a juvenile treatment center *pending appeal*. Hartung accepted the conditions of the stay on October 31, 1978, and did in fact appeal the reference order on November 2, 1978. On appeal the Minnesota Supreme Court held that the juvenile court erred in granting the stay. *In re Welfare of K. P. H.*, 289 N.W.2d at 725. Hartung does not appeal that holding but rather attempts to attack it collaterally by construing the stay as an enforceable bargain. We conclude that the argument is without merit.

The judgment of the district court is affirmed.