GEORGE F. SLOAN ET AL. *vs.* SAMUEL GROLLMAN.

*Bankruptcy—Claim of Creditor Omitted from Schedule of
Debts—Insufficient Evidence to Show Notice of
Bankruptcy Proceedings to Creditor.*

Under the provisions of the Federal Bankruptcy Act, a dis-
charge in bankruptcy does not affect the claim of a creditor
of a bankrupt whose name was not returned in the schedules,
unless the omitted creditor had notice or actual knowledge of
the proceedings in bankruptcy. Since the failure to return a
claim in the schedules is due to the fault of the bankrupt, the
burden is upon him to prove that the omitted creditor did
have notice of the proceedings.

In this case, a judgment debtor asked a Court of Equity to
restrain an execution on the judgment on the ground that he
had been discharged in bankruptcy after the entry of the

judgment, and alleged that, although the name of the judg-
ment creditor had been omitted in the schedule of the debts
in the bankruptcy proceedings, yet the judgment creditor had
been notified of the proceedings both personally and by letter.
*Held,* that the evidence fails to support these allegations, in
the face of their denial by the judgment creditor, and that,
since the debtor has not met the burden of proof put upon
him, his bill of complaint is dismissed.

*Decided April 27th, 1910.*

Appeal from the Circuit Court for Kent County (PEARCE,
C. J.).

The cause was argued before BOYD, C. J., BRISCOE,
SCHMUCKER, BURKE, THOMAS and URNER, JJ.

*Hope H. Barroll* and *Frank Gosnell,* for the appellant.

*William W. Beck,* for the appellee.

URNER, J., delivered the opinion of the Court.

Among the debts excepted from the operation of a dis-
charge in bankruptcy are such as "have not been duly
scheduled in time for proof and allowance, with the name of
the creditor if known to the bankrupt, unless such creditor
had notice or actual knowledge of the proceedings in bank-
ruptcy." Section 17 (3) U. S. Bankruptcy Act, Comp. Stat.
1901, page 3428.

The appellee filed his petition in voluntary bankruptcy
on November 23rd, 1903, and on May 21st, 1904, obtained
his discharge. At the time of his application he was in-
debted to the appellants upon a judgment for $215.19 re-
covered in 1900. This debt was not scheduled. In 1908
the appellants issued execution on the judgment, and in the
present proceeding to restrain its enforcement the question
is whether the judgment creditors had "notice or actual
knowledge of the proceedings in bankruptcy" so as to be af-

fected by the discharge notwithstanding the omission of their claim from the schedule.

It is alleged in the bill of complaint that although the judgment in question was not mentioned in the schedule yet the plaintiff (appellee) "immediately, personally notified" the defendants (appellants) of the filing of the petition in bankruptcy, and the appellee's attorney also "within a very few days" after the petition was filed wrote to the defendants at their place of business in Baltimore City notifying them of the filing of the petition with instructions to prove their claim, and that the letter was enclosed in an envelope bearing his name and address and was never returned.

These allegations were explicitly denied by the defendants in their answer to the bill.

As the discharge is for the benefit of the bankrupt and as the omission of a claim from the schedule is due to his default it is well settled that the burden is upon him to prove that the omitted creditor had the requisite notice or knowledge of the proceedings. *Armstrong* v. *Sweeney,* 73 Neb. 775; *Collins* v. *McWalters,* 72 N. Y. Suppl. 205; *Wineman* v. *Fisher,* 135 Mich. 604; *Collins* v. *Crewes,* 3 Ga. App. 238.

It appears from the appellee's testimony that he had been engaged for a number of years in the business of buying and selling live stock, and that he failed in 1898. After his failure he conducted the business in his wife's name until he obtained his discharge in bankruptcy in 1904 when he resumed operations in his own name. In 1905 and 1907 he bought two farms, paying $2,600 on one of the properties and on the other $3,300. He stated that he borrowed for this purpose $2,200 from his wife, she having received the greater part of that amount from the estate of a relative who died in 1902. He claimed that he had not a dollar when he filed his petition in bankruptcy. Without attempting to support the averment in his bill of complaint, to which he had made oath, that he had personally notified the appellants of the bankruptcy proceedings immednately after the filing of

his petition in November, 1903, he testified that in February, 1904, after the Baltimore fire, he went to that city on a Friday and got a certain Mr. Emory, with whom he had some business, to write the appellants a letter notifying them of the application in bankruptcy, and that the letter was mailed; that on the following Monday he went to Centreville and while there told Mr. Legg, his attorney in the bankruptcy matter, that the appellants' claim had been left out, and asked that they be notified of the proceedings; that Mr. Legg at once wrote a letter to that effect and said that he would mail it; that in March, 1904, he (the appellee) bought a bill of lumber amounting to about thirteen dollars from the appellants and gave a check signed in his wife's name; that a little fellow he supposed to be Fisher Sloan, one of the appellants, asked why the check was signed in the name of B. Grollman, to which the appellee replied by telling of his failure and stating that he was now taking the benefit of the bankrupt law; that he asked the person to whom he gave the check whether he had not heard from Mr. Legg as to the bankruptcy proceedings, but to this question he received no answer. It was testified by Mr. Emory that in January or February, 1904, he wrote a letter at the appellee's request giving notice of the latter's application for the benefit of the bankrupt law, and while not certain to whom the letter was addressed his impression was that it was to Sloan & Bro., the appellants. He stated that he gave the letter to the appellee to mail, that it was enclosed in one of his business envelopes with his name and address on the outside and that it was never returned.

Mr. Legg testified that sometime after the petition in bankruptcy was filed, but just when he could not say, the appellee told him that he had omitted the claims of the appellants and some other creditors from the schedule, and that he at once wrote to the appellants informing them of the proceedings; that the appellee proposed to mail the letter, but the witness said he would mail it himself and did so in the appellee's presence; that it was in one of the witness' busi-

ness envelopes bearing his name and address, with direction for its return in five days if not delivered and it was not returned.

On cross-examination Mr. Legg testified that when the appellee told him of the omission of the appellants' claim from the schedule he mentioned two other creditors who had been omitted, and that he wrote to them all at the same time, and subsequently sent a list of the omitted creditors to the referee in bankruptcy. Upon being shown the supplemental list sent by him to the referee he stated that the appellants' names were not included, but that he had always been under the impression that he had sent in their names until he had recently learned from the referee to the contrary.

The appellants are partners, and the firm is composed of George F. Sloan and Fisher Sloan. Each of them testified that neither of the letters mentioned by the appellee and his witnesses had ever been received by the firm or either of its members, and that they had not learned of the bankruptcy proceedings until long after the appellee's discharge, their first information on the subject having been communicated to them by Mr. Barroll, their attorney, who wrote them in 1906 that the appellee had pleaded the discharge as against an attachment then issued and pending on the appellants' judgment. Their letter in reply is in evidence. It expresses surprise at the statment contained in Mr. Barroll's letter and declares: "This is the first we knew of Mr. Grollman taking advantage of the Bankruptcy Law, and we have never received notice of same from the referee nor any other person."

It was proven by the appellants that it was the custom in their office to keep and file all letters and that they had examined their letter files and found none from either Mr. Emory or Mr. Legg. They testified that the appellee never told either of them at any time that he had applied for a discharge in bankruptcy and they denied that he had bought or paid for the small bill of lumber he had mentioned. The testimony of Mr. Albert, the appellants' bookkeeper, was to the same effect. He was positive that no such letters as the

plaintiff testified to were ever received by himself, the firm or either of its members. He stated that it was a rule of the office that the mail was opened only by himself or a member of the firm, and that he never heard any such conversation as that narrated by the appellee and knew of no such purchase as that he claimed to have made.

The referee in bankruptcy, Mr. Sidney P. Townshend, testified that since the institution of this suit Mr. Legg had insisted that he had given in the appellants' name with the others in the supplemental list and seemed very positive that he had done so until the list was submitted to his inspection.

In rebuttal Isaac Kahn testified that sometime in March, 1904, he made out a check for the appellee payable to the appellants for something over thirteen dollars and went with the appellee to the appellants' place of business and saw the check delivered; that the appellee was asked, when he presented the check, why it was signed by Grollman, and he replied that it was on account of his having applied for the benefit of the bankrupt law. He did not undertake to say to whom the check was handed, but stated that he thought Mr. Albert was present. It was in evidence that there were about eight persons employed in the office.

The appellants and Mr. Albert testified that they did not know Isaac Kahn and denied the conversation at which he claimed to have been present.

It may be noted in this connection that the appellee made no allusion in his testimony to the presence of Kahn on such an occasion, and that he did not produce or attempt to account for the check to which he referred.

It does not seem necessary to discuss this feature of the evidence further than to say that neither the appellee nor Kahn professes to be certain that the alleged interview in March occurred with either of the members of the appellants' firm or with their bookkeeper, Mr. Albert, or with anyone shown clearly to have sustained such a relation of agency to the appellants as to impute to them knowledge of the appellee's communication. 31 *Cyc.* 1591; 1 *Am. & Eng.*

*Encycl. Law* (2nd ed.) 1149; *Collins* v. *Crewes, supra.* The evidence is entirely too vague and incomplete to prove that on this particular occasion the appellants received "notice or actual knowledge" of the proceedings in bankruptcy.

If we are to find that they acquired such knowledge at all, we must base that conclusion upon the evidence relating to the letters stated to have been written by Mr. Emory and Mr. Legg. We have the testimony of the former that he wrote one of the letters, but we have only the appellee's statement that it was actually mailed. If he did in fact mail it, then the presumption would arise, though it would not be conclusive, that it was received by the persons to whom it was addressed. *Lawrence Bank* v. *Raney*, 77 Md. 321.

The practical question, however, with which we have to deal, in view of the positive denial of its receipt by the appellants, is whether the letter was mailed at all. If it was not received, there may be reason to question the mailing of the letter as a primary fact, and in that aspect of the situation the intermediate inquiry as to whether the letter was returned to the person whose business card appeared on the envelope becomes irrelevant. The appellee could not be held to have sustained the burden of proof placed upon him by the law if he had testified that instead of mailing the letter in question, he delivered it in person to the appellants, his testimony to that effect being met by an unequivocal denial of its receipt. He can certainly be accorded no more advantageous position, with reference to the preponderance of the evidence, by testifying that he mailed a letter, whose receipt is denied, than he would occupy if he relied upon a communication in person. So far, then, as the mailing of the Emory letter is concerned, we are left to the affirmation of the appellee and the denial of the appellants, and we could not hold, therefore, that the burden of proof has been satisfactorily met as to that distinct question of fact.

The only witness, other than the appellee himself, who has testified as to the mailing of a notice to the appellants of the pendency of the bankruptcy proceedings is Mr. Legg.

the appellee's attorney.   He was undoubtedly sincere in his belief that he wrote and mailed the letter mentioned in his testimony, but he was equally sincere and positive in his statement that he had sent the appellants' name to the referee. As his memory is admitted to have been wholly at fault in one of these particulars, it is not unreasonable to suppose that it may have been in error as to the other.  .There is no similar doubt suggested in the testimony of the appellants as to the clearness of their recollection when they swear emphatically that they never received any information as to the bankruptcy proceedings until long after the discharge was granted, and when they express in 1906 what was evidently their genuine surprise upon learning of the proceedings.

Under all the circumstances shown by the record we do not feel justified in holding that the appellee has effectually relieved himself of the consequences of his default in omitting the appellants' claim from his schedule by sustaining the burden of proving "notice or actual knowledge" on their part "by a fair preponderance of evidence."   *Collins* v. *Mc-Walters, supra.*

As the learned Court below reached a different conclusion upon the evidence from that to which we have come its decree will be reversed.

> *Decree reversed with costs to the appellants above and below and bill dismissed.*