31 A.3d 173

**Darryl K. HARROD**

**v.**

**STATE of Maryland.**

**No. 69, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 27, 2011.

Eric A. Harrington, Assigned Public Defender, Washington, DC, for Petitioner.

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

BATTAGLIA, J.

In this case, we consider whether, in a retrial of a criminal case involving a controlled dangerous substance, the State is required, prior to trial, to timely give notice of its intent to admit the chemist's report into evidence without the presence of the chemist pursuant to statute, when the chemist had testified and was subjected to cross-examination and the report had been admitted into evidence during the first trial.

Petitioner, Darryl K. Harrod, seeks reversal of his conviction in the Circuit Court for Montgomery County for possession with intent to distribute cocaine, arguing that the trial court erroneously admitted a chemist's report without the presence of the chemist, in violation of the procedures mandated by Section 10–1003 of the Courts and Judicial Proceedings Article, Maryland Code (1973, 2006 Repl.Vol.).[1] The Court of

---

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Section 10–1003 of the Courts and Judicial Proceedings Article provides:

(a) *In general.*—(1) In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least 5 days prior to a trial in the proceeding, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness.

(2) The provisions of §§ 10–1001 and 10–1002 of this part concerning prima facie evidence do not apply to the testimony of that witness.

(3) The provisions of § § 10–1001 and 10–1002 of this part are applicable in a criminal proceeding only when a copy of the report or statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to the defendant personally when the defendant is not represented by counsel, at least 10 days prior to the introduction of the report or statement at trial.

(b) *Witness for defense.*—Nothing contained in this part shall prevent the defendant from summoning a witness mentioned in this part as a witness for the defense.

Md.Code (1973, 2006 Repl.Vol.), § 10–1003 of the Courts and Judicial Proceedings Article.

Section 10–1001 of the Courts and Judicial Proceedings Article states:

For the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled dangerous substance under Title 5 of the Criminal Law Article, a report signed

Special Appeals affirmed Harrod's conviction, *Harrod v. State*, 192 Md.App. 85, 993 A.2d 1113 (2010), and we granted certiorari, *Harrod v. State*, 415 Md. 337, 1 A.3d 467 (2010), to answer the following questions:

1. Whether, under Maryland Courts & Judicial Proceedings Article §§ 10–1001 to 10–1003, the State may, without providing notice to the defendant, admit a chemist report in a drug prosecution without the presence of the chemist unless the defendant specifically requests the presence of the chemist prior to each trial?

2. Whether, when an issue is decided by the trial court, the entire issue is subject to appellate review under Maryland Rule 8–131(a) or just those bases expressly articulated in or by the trial court?

We shall hold that it was error to admit the chemist's report and testimony during Harrod's retrial, because the State failed to provide the requisite notice pursuant to Section 10–

---

by the chemist or analyst who performed the test or tests as to its nature is prima facie evidence that the material delivered to the chemist or analyst was properly tested under procedures approved by the Department of Health and Mental Hygiene, that those procedures are legally reliable, that the material was delivered to the chemist or analyst by the officer or person stated in the report, and that the material was or contained the substance therein stated, without the necessity of the chemist or analyst personally appearing in court, provided the report identifies the chemist or analyst as an individual certified by the Department of Health and Mental Hygiene, the Department of State Police, the Baltimore City Police Department, or any county police department employing analysts of controlled dangerous substances, as qualified under standards approved by the Department of Health and Mental Hygiene to analyze those substances, states that the chemist or analyst made an analysis of the material under procedures approved by that department, and also states that the substance, in the opinion of the chemist or analyst, is or contains the particular controlled dangerous substance specified. Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumptions raised by the report.

Md.Code (1973, 2006 Repl.Vol.), § 10–1001 of the Courts and Judicial Proceedings Article. All references to Sections 10–1001 and 10–1003 of the Courts and Judicial Proceedings Article throughout are to Maryland Code (1973, 2006 Repl.Vol.), unless otherwise noted.

1003 of the Courts and Judicial Proceedings Article prior to the retrial and that error was not harmless.

Harrod was initially charged in a two-count indictment with possession with the intent to distribute cocaine and assault in the second degree. During Harrod's first jury trial, a chemist called by the State appeared, was qualified as an expert witness and testified from her report regarding the identity of the controlled substance as cocaine and its weight of 8.93 grams; she was subjected to cross-examination by Harrod's counsel. After the jury sent two notes indicating impasse, the trial judge, upon Harrod's motion, declared a mistrial as to the possession with intent to distribute charge and took a not guilty verdict as to the assault charge.

Harrod retained new counsel. Five days prior to the date scheduled for Harrod's retrial, Harrod's new attorney filed an "Unopposed Motion for Continuance," which stated that, due to a family emergency, defense counsel "anticipate[d] that she w[ould] not be available, or if she [was] available, w[ould] not be prepared to try this case on the scheduled date." In reliance upon defense counsel's representations, the State "informed [its] witnesses" that the trial "was most likely going to be continued due to the dire nature of the continuance," and it did not assure the chemist's appearance. Soon thereafter, however, the administrative judge denied the motion, reasoning that the "[c]ase ha[d] been pending seven (7) months since the mistrial;" the retrial began on the original date.

At the retrial, counsel for the State moved to have the testimony of the chemist from the first trial admitted into evidence. Defense counsel objected, stating that she had not had an opportunity to cross-examine the State's chemist and would have done so differently, but she did not specifically challenge the availability of the chemist. The trial judge replied that he did not perceive a "violation of 5–802.1" [2] or any "violation of *Crawford v. Washington*." [3]

---

**2.** Maryland Rule 5–802.1 states:

The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

The State also moved to have the substance and the chemist's report identifying it as cocaine admitted into evidence, to which defense counsel objected. The State responded that, pursuant to the Courts and Judicial Proceedings Article, it was "allowed to just submit the report and the drugs and not have ... the testimony." The trial judge, referencing Section 10–1003 of the Courts and Judicial Proceedings Article, ruled that the chemist report was admissible without the chemist unless Harrod filed a written demand prior to the retrial. Thereafter, the judge permitted the State to both admit and read the testimony of the chemist into evidence, as well as to admit her report. Ultimately, Harrod was convicted and sentenced to seven years' imprisonment.[4]

---

(a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and was signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement;
(b) A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive;
(c) A statement that is one of identification of a person made after perceiving the person;
(d) A statement that is one of prompt complaint of sexually assaultive behavior to which the declarant was subjected if the statement is consistent with the declarant's testimony; or
(e) A statement that is in the form of a memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, if the statement was made or adopted by the witness when the matter was fresh in the witness's memory and reflects that knowledge correctly. If admitted, the statement may be read into evidence but the memorandum or record may not itself be received as an exhibit unless offered by an adverse party.

3. In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59, 124 S.Ct. at 1369, 158 L.Ed.2d at 197.

4. Harrod thereafter applied for a three-judge panel to review his sentence. By order of that panel, however, Harrod's application for a

Harrod noted an appeal to the Court of Special Appeals, asserting, among other arguments,[5] that the trial court's admission of the chemist's report and testimony violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution,[6] *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), because, absent a showing that the State's chemist was unavailable to testify at trial and that Harrod had the prior opportunity to cross-examine her, Harrod was entitled to be confronted by the chemist at his retrial.[7]

---

sentence review was held in abeyance pending the outcome of appellate proceedings.

**5.** Harrod raised these three questions, and related arguments, in his brief before the Court of Special Appeals, only two of which are now before us:

1. Mr. Harrod is entitled to the suppression of any narcotics allegedly recovered from him because the search violated the Fourth Amendment.

❖    *    ❖

2. The trial court erred in admitting the chemist report.

A. The Admission of the Chemist Report Violated Mr. Harrod's Sixth Amendment Right To Be Confronted with Witnesses Against Him

B. The Admission of the Chemist Report Without the Presence of the Chemist Violated Maryland Code, Courts and Judicial Proceedings § § 10–1001 to 10–1003.

C. The Admission of the Chemist Report Was Not Harmless.

3. The trial court erred in admitting prior testimony of Keith Duggan and Susan Cohen.

A. The Admission of the Prior Testimony of Officer Keith Duggan and Susan Cohen Violated Mr. Harrod's Sixth Amendment Right to Confront Witnesses Against Him.

B. The Trial Court Erred in Admitting the Prior Testimony of Susan Cohen and Officer Duggan Under Maryland Rule of Evidence 5–802.1

C. The Admission of the Prior Testimony Was Not Harmless.

**6.** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

**7.** In *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the United States Supreme Court considered the Confrontation Clause implications of a prosecutor's introduction of a

The intermediate appellate court declined to reach the constitutional arguments based on its view that Harrod had failed to object regarding the availability of the chemist in the trial court. *Harrod v. State,* 192 Md.App. 85, 993 A.2d 1113 (2010).

Harrod also had argued, however, that the trial court's admission of the chemist's report violated Section 10–1003 of the Courts and Judicial Proceedings Article, in part, because "the State provided no notice that it intended to admit the report without calling the chemist" prior to Harrod's retrial. The intermediate appellate court rejected this argument, reasoning that "the statute requires only that the report be 'made available to counsel' " and Harrod had "given no indication that the report was not available to him prior to his retrial." *Id.* at 133 n. 24, 993 A.2d at 1141 n. 24.

### Discussion

██ In his first certiorari question, Harrod asks us to determine whether Sections 10–1001 and 10–1003 of the Courts and Judicial Proceedings Article required the State to provide timely pretrial notice of its intent to admit the chemist's report at Harrod's retrial without the presence of the chemist.[8]

---

report indicating "the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine." *Id.* at ——, 129 S.Ct. at 2530, 174 L.Ed.2d at 318. The Court determined that, "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial." *Id.* at ——, 129 S.Ct. at 2532, 174 L.Ed.2d at 322.

8.  Preliminarily, the State has asserted that Harrod did not preserve his claim of failure of notice. At the outset of Harrod's new trial, however, in response to news that the State's witnesses would be absent, defense counsel requested the presence of the State's chemist. The State objected, adding that, pursuant to the Courts and Judicial Proceedings Article, the State is "allowed to . . . just submit the report and the drugs and not have . . . the testimony." Defense counsel responded that "there was a demand made" at the "previous trial" for the presence of the chemist. Thereafter, the trial judge, referencing Section 10–1003(a), ruled that "demand has to be made in respect of the particular trial," adding that "the purpose of the statute is to give the State notice

We recently discussed the standard of review regarding matters of statutory interpretation in *Evans v. State*, 420 Md. 391, 23 A.3d 223 (2011):

> In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules. We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.
>
> If, however, the language is subject to more than one interpretation, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute. When the statute is part of a larger statutory scheme, it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the purpose, aim, or policy of the enacting body, and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

*Id.* at 400, 23 A.3d at 228, quoting *Ray v. State*, 410 Md. 384, 404–405, 978 A.2d 736, 747–748 (2009).

The provisions regarding testimony at trial of the chemist and the admissibility of her report are reflected in Sections

---

that the defendant wants the witness." Later during trial, when the State sought to introduce the chemist's report, defense counsel stated "Same objections, Your Honor." Moreover, the Court of Special Appeals explicitly reached this argument.

10–1001 and 10–1003 of the Courts and Judicial Proceedings Article. Section 10–1001 provides that, "without the necessity of the chemist or analyst personally appearing in court," a "report signed by the chemist or analyst who performed the test" may serve as "prima facie evidence" that the "material was or contained the substance therein stated."

Section 10–1003 of the Courts and Judicial Proceedings Article states:

(a) *In general.*—(1) In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least 5 days prior to a trial in the proceeding, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness.

(2) The provisions of §§ 10–1001 and 10–1002 of this part concerning prima facie evidence do not apply to the testimony of that witness.

(3) The provisions of §§ 10–1001 and 10–1002 of this part are applicable in a criminal proceeding only when a copy of the report or statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to the defendant personally when the defendant is not represented by counsel, at least 10 days prior to the introduction of the report or statement at trial.

(b) *Witness for defense.*—Nothing contained in this part shall prevent the defendant from summoning a witness mentioned in this part as a witness for the defense.

Harrod argues, initially, that he was entitled to timely notice of the chemist's report before the retrial in order for the State to introduce it and that this notice would have triggered his demand for the chemist's testimony. The State suggests that the chemist report was made available prior to the first trial, so that notice was not necessary again, and that the chemist's testimony was admitted during the first trial and Harrod did not demand her presence again. Seminally, we obviously must discuss the effect of the granting of a mistrial on subsequent pretrial procedures.

■ It is well-established in our jurisprudence that the grant of a mistrial upon a defendant's request or consent does not preclude a retrial. *Bell v. State*, 286 Md. 193, 202, 406 A.2d 909, 913 (1979). We have noted, in *dicta*, that the grant of a mistrial is "tantamount to a holding that there had been no trial at all," which does not "deny either the accused or the State the opportunity to litigate directly their rights on retrial." *Cook v. State*, 281 Md. 665, 670–671, 381 A.2d 671, 674 (1978); *see also Powers v. State*, 285 Md. 269, 285, 401 A.2d 1031, 1040 (1979) ("a mistrial is equivalent to no trial at all"). Similarly, of the grant of a new trial, we have suggested, at least in the usual context, that the effect "is to leave the cause in the same condition as if no previous trial had been held." *Cottman v. State*, 395 Md. 729, 743, 912 A.2d 620, 628 (2006), quoting *Snyder v. Cearfoss*, 186 Md. 360, 367, 46 A.2d 607, 610 (1946); *see also State Use of Scruggs v. Baltimore Transit Co.*, 177 Md. 451, 454, 9 A.2d 753, 754 (1939) ("[T]he beneficial procedural incidence of the order is to reestablish the equality in law of the parties, which was lost, by restoring them to the position of the litigants at the beginning of the trial before a jury."); *Hammersla v. State*, 184 Md.App. 295, 313, 965 A.2d 912, 923 (2009) (concluding that the grant of a new trial "wiped the slate clean," and revived the State's obligation to provide notice of its intent to seek an enhanced penalty prior to sentencing), *cert. denied*, 409 Md. 49, 972 A.2d 862 (2009).

■ Whether a mistrial in a criminal context restores the parties to their original pretrial positions does not appear to be answered in our jurisprudence. Nevertheless, it is not a leap of faith to acknowledge that the grant of a mistrial in a criminal case does create a "tabula rasa" and requires the litigants to observe pretrial procedures once again. The Supreme Court of Idaho, in *State v. Bitz*, 89 Idaho 181, 404 P.2d 628 (1965), so recognized.

In *Bitz*, two co-defendants were retried on burglary charges after a mistrial. Prior to the retrial, Bitz filed motions for a change of venue and a continuance as well as an affidavit to disqualify the trial judge. The trial judge denied the motions,

reasoning that such pretrial relief was available to Bitz only on retrial after appellate reversal of a conviction. The Idaho Supreme Court reversed, concluding that Bitz's pretrial motions were authorized, because "upon the entry of [mistrial] the case reverted to the status it had prior to the commencement of such proceedings." *Id.* at 631; *see also Commonwealth v. James*, 506 Pa. 526, 486 A.2d 376, 379 (1985) (opining that, when a mistrial is declared, "the status of the case is as though a trial had never occurred and places the matter in a pretrial context").

■ If, then, the grant of a new trial after a mistrial creates a "tabula rasa," we go back to square one to determine what the parties' responsibilities were. According to Section 10–1003(a)(3) of the Courts and Judicial Proceedings Article, the State is required to give timely notice by "mail[ing], deliver[ing], or ma[king] available to counsel for the defendant" a "copy of the report or statement to be introduced" in order to admit it as substantive evidence without the presence of the chemist under Section 10–1001. The mistrial revived the State's obligation.

■ The State asserts that the record "provides no reason to believe that a copy of the chemist's report was not 'made available' to second-trial counsel." In support, the State postulates that its obligation under Section 10–1003(a)(3) may have been met informally in this case, whether by "handing a copy of the report to defense counsel in person, by calling defense counsel and telling her that it was available," or by " 'open-file' discovery." [9] The State, in so doing, misconstrues that the burden of proof that it shoulders can be met by inference and that conversely, Harrod must prove that he did not receive the chemist's report.

---

9. Prior to Harrod's first trial, the State filed a "Supplemental Line of Discovery" with the Circuit Court, which stated:

**Clerk of Court:**
   Please filed the attached letter in the above-captioned case, which will reflect that on this 20th day of April, 2007, the drug report was made available . . . as additional discovery in this case.

Under Section 10–1003(a)(3), the State is the beneficiary of providing notice, because the chemist's report can be admitted under Section 10–1001 without the presence of the chemist at trial. When we have addressed the obligations of one who was benefitted from notice, we have recognized the burden of proof is his. In *Sloan v. Grollman*, 113 Md. 192, 77 A. 577 (1910), the Sloans, creditors, disputed that they had received notice from the debtor, Mr. Grollman, that he had filed for bankruptcy, thereby claiming his discharge was ineffective. In response, Mr. Grollman asserted that his attorney had written a letter to the Sloans' office in Baltimore city " 'within a very few days' after the petition was filed," *Id.* at 194, 77 A. at 577, but did not produce anything. In resolving the dispute, we instructed that the filing of a notice of discharge in bankruptcy "is for the benefit of the bankrupt," and as such, "the burden is upon him to prove that the omitted creditor had requisite notice on or knowledge of the proceedings." *Id.* at 194, 77 A. at 577. In the case before us, as the party to benefit, the State clearly bears the burden of producing proof of compliance prior to retrial, which it has failed to shoulder.

While we have not directly discussed the effect of the State's failure to observe the notice requirements in Section 10–1003, our colleagues on the Court of Special Appeals have, and, unwaveringly, they have characterized the State's failure to provide notice as fatal to the admission of a chemist report without the presence of the chemist. *See Best v. State*, 79 Md.App. 241, 251, 556 A.2d 701, 706 (1989) (stating that Section 10–1003 acts as a "safety catch," because it precludes the State from admitting a chemist report "where the State has failed to give notice to the defendant or his counsel at least ten days prior to the introduction of . . . the written report (in lieu of the chemist)"); *Gillis v. State*, 53 Md.App. 691, 698, 456 A.2d 89, 93 (1983) (concluding that where "[t]he State elected not to comply with the clear mandate of the statute . . . . the trial judge should have required the witnesses to be produced"); *Knight v. State*, 41 Md.App. 691, 694, 398 A.2d 811, 813 (1979) (reversing conviction where "[t]here [was] absolutely nothing written, typed, or printed upon th[e] report

that would lead anyone to believe that the State intended to submit the report in lieu of the testimony of the chemist").

This stance is in keeping with the rigors of strict compliance enforced by various of our sister states with statutes similar to our own. In *State v. Neal,* 144 Wash.2d 600, 30 P.3d 1255 (2001), for example, the State served Neal with a copy of a toxicologist's report, but the report failed to provide the name of the person receiving the substance as required by court rule.[10] Nonetheless, over Neal's objection, the trial court admitted the State's lab report, reasoning that the "certificate substantially complied with the rule." *Id.* at 1257. The Supreme Court of Washington reversed Neal's conviction, reasoning that "strict compliance is required" and the "failure of the State to comply with the notice requirements of CrR 6.13(b)(3) mandates exclusion of the report." *Id.* at 1260, 1261.

In *State v. Miller,* 170 N.J. 417, 790 A.2d 144 (2002), the Supreme Court of New Jersey also characterized that State's notice requirement as inflexible.[11] In the context of a prosecution for possession of cocaine, the State had notified Miller of its intention to admit a chemist's report without the presence of its chemist, but without forwarding a copy of the data revealed in the chemist's lab analysis. At trial, the court received the chemist's report over Miller's objection. The Supreme Court ordered a remand, reasoning that "[a] party

---

10. In Washington, in order to admit a lab report "as prima facie evidence of the facts stated in the report," Wash. CrR 6.13(b)(1), the State must serve a "defendant or the defendant's attorney at least 15 days prior to the trial date." Wash. CrR. 6.13(b)(3)(i). Among other requirements, the lab report must reflect "the name of the person from whom the substance or object was received." Wash. CrR 6.13(b)(1).

11. In New Jersey, in order to admit a lab analysis certificate as evidence of the "composition, quality, and quantity of the substance submitted to the laboratory," N.J. Stat. Ann. § 2C:35-19(b) (West 2005), the State must convey it "to the opposing party or parties at least 20 days before the proceeding begins," *Id.* § 2C:35-19(c). Among other requirements, the certificate must include "the type of analysis performed; the result achieved; and any conclusions reached based upon that result." *Id.* § 2C:35-19(b).

intending to proffer the certificate must convey 'notice of an intent' to do so to the opposing party at least twenty days before the trial" and that "notice must include a copy of the lab certificate." *Id.* at 151. The court, explaining strict compliance, pointed out that the "State is fully aware of the lab procedures and the outcome of the testing and has complete access to the lab employees" while defendants are "essentially in the dark and unable to test the lab results" by themselves. *Id.* at 154–55.

The State wants us to excuse its failure to give notice also by the fortuity of the chemist having testified at Harrod's first trial. In essence, the State argues that even if the chemist's report cannot be received in evidence, then the chemist's testimony alone, or even based on her report, was properly admitted because Harrod did not request the presence of the chemist, so that two fouls equal a home run for the State. Section 10–1003(a)(3) disqualifies the State from admitting a chemist report without the chemist, unless it timely mails, delivers, or makes available a copy of the chemist report to the defendant. The State did not comply with the dictates of the statute, substantially or strictly. As a result, the chemist's testimony does not correct the error.[12]

██ The State, nevertheless, insists that the failure to provide timely notice was harmless, because Harrod had "actual notice" of the contents of the chemist report as well as the chemist's former testimony. Harrod counters that the erroneous admission of the chemist's report and testimony cannot be harmless, because it "provided the only evidence that the seized substance was a controlled substance, an element of the offense."

---

12. Because we dispose of Harrod's appeal on the provisions of Sections 10–1001 and 10–1003 of the Courts and Judicial Proceedings Article, we need not address any constitutional arguments arising from *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

In *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976), we instructed that, when performing harmless error review, we conduct an independent assessment of the "impact of the erroneous ruling upon the defendant's trial and the effect it ha[d] upon the decisional process," irrespective of whether the error could be labeled "as constitutional or nonconstitutional." *Id.* at 658, 350 A.2d at 677; *see also Brafman v. State*, 276 Md. 676, 679, 349 A.2d 632, 633 (1976) (explaining that, in the context of making a determination as to whether erroneous admission of hearsay testimony was harmless, whether the Sixth Amendment right to confrontation was violated "is of no real moment."). The result of harmless error review depends upon "our own independent review of the record," in order to determine whether we are "able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey*, 276 Md. at 659, 350 A.2d at 678.

In conducting such an analysis, in the arena of inadmissible evidence, we, as we recently did in two such cases, conduct a thorough review of the record to determine whether we are "able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey*, 276 Md. at 659, 350 A.2d at 678. In *Anderson v. State*, 420 Md. 554, 24 A.3d 692 (2011), in the context of a prosecution for sexual abuse of a minor, we considered whether the admission of a doctor's report into evidence, despite it being inadmissible hearsay, was harmless beyond a reasonable doubt. In framing our analysis, we instructed that harmless error was "determined by examining the use that the State made" of the inadmissible doctor's report. *Id.* at 569, 24 A.3d at 700. We observed that the State continually reemphasized the statements made by the victim in the doctor's report during closing argument, many of which inculpated the defendant, which precluded us from declaring beyond a reasonable doubt that the erroneous reception of the doctor's report was harmless.

In *Parker v. State*, 408 Md. 428, 970 A.2d 320 (2009), we also determined that the trial court erroneously admitted a confidential informant's hearsay statement, which placed the defen-

dant at the scene of a drug-trafficking crime. In applying the *Dorsey* standard, we hinged the fulcrum between harmless and harmful error upon whether we could declare a belief beyond a reasonable doubt that the informant's statements "in no way influenced the jury's verdict." *Id.* at 447, 970 A.2d at 331–332. We were unable to declare such a belief, we explained, because the informant's statement that "an individual fitting Parker's description was 'selling heroin from his person'" at the scene of the crime "provided potentially scale-tipping corroboration" for the investigating officer's testimony that "he observed Parker engage in what he believed to be 'illegal narcotic activity.'" *Id.* at 447–48, 970 A.2d at 332. The informant's testimony, we concluded, "added substantial, perhaps even critical, weight to the State's case against Parker," and we ordered a new trial. *Id.* at 448, 970 A.2d at 332 (citation omitted) (internal quotation marks omitted).

Harmless error analysis in the instant case, applied correctly, yields the only justified conclusion that admission of the chemist's report and testimony was prejudicial, and *ergo,* harmful. In order to support a conviction for possession with intent to distribute a controlled dangerous substance, the State introduced the chemist's report to prove that the "40 rocks of white chalky [substance]" seized from Harrod's person was "crack cocaine" and totaled "8.93 grams" in weight. Certainly, both the identity of the rocks as controlled dangerous substances, as well as their weight, were adduced to satisfy the elements of the charge, "possess[ing] cocaine, a controlled dangerous substance, in sufficient quantity to reasonably indicate under all circumstance[s] an intent to distribute the controlled dangerous substance, in violation of Section 5–602(2) of the Criminal Law Article...." How, then, could the admission of the report and the testimony adduced relative to it be anything other than harmful? The State, clearly, recognized the importance of the chemist's report in its closing when the State's Attorney argued:

This is my favorite because it's the *easiest. We know it's crack; we know it's cocaine.* There are a couple of different ways, but the *primary* one being the lab report....

[H]ere's the report, you can look at it, it's been admitted— [the chemist] determined that, yes, they were in fact 8.93 grams of cocaine. So, that has been proven and that's by [the chemist] and the lab report.

The chemist report and its attendant testimony were adduced to satisfy proof of the elements of the crime, and thus, their admission was not harmless.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF CONVICTION AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.**

MURPHY, J., joins in judgment only.