Dissenting Opinion by FRIEDMAN, J.
FRIEDMAN, J., dissenting.
The trial judge heard all of the evidence against Michael Johnson and pronounced it insufficient. By granting a motion pursuant to Rule 4-324, the judge said, in effect, that there was “no relevant evidence [that] is legally sufficient to sustain a conviction.” Brooks v. State, 299 Md. 146, 151, 472 A.2d 981 (1984). That is powerful stuff. Once that happens, we don’t *514 usually give the State a second (or in this case, third) bite at the apple. Prohibitions on placing defendants in double jeopardy, whether arising from federal constitutional or state common law principles,[1] bar subsequent re-prosecutions after such an acquittal. The majority acknowledges this general rule, but argues that, because the trial judge had already granted a mistrial, the court was left with insufficient jurisdiction to then grant the motion for judgment of acquittal. Thus, in the opinion of the majority, the acquittal was ineffective. Because I disagree, I must, respectfully, dissent.
I.
I would begin the analysis by conceding that the grant of the motion for judgment of acquittal after the mistrial was not just unusual, it was procedurally defective. I don’t think, however, that the defect matters. The Court of Appeals has repeatedly held, in a variety of contexts, that even a procedurally defective acquittal — so long as the court has subject matter jurisdiction over the crime and personal jurisdiction over the defendant — creates a double jeopardy bar to repeat prosecution. State v. Taylor, 371 Md. 617, 810 A.2d 964 (2002); Block v. State, 286 Md. 266, 407 A.2d 320 (1979); Parojinog v. State, 282 Md. 256, 384 A.2d 86 (1978). In Taylor, for example, the Court of Appeals explained that “[concluding that the trial courts erred procedurally does not end our analysis____ [T]he substance of the trial judges’ rulings was to grant judgments of acquittal and ... we must treat them [as such] for double jeopardy analysis.” Taylor, 371 Md. at 648, 810 A.2d 964. The Court explained that, “even though the form or timing of a trial court action may be erroneous, it is the substance of the action that is determinative for jeopardy analysis.” Id. at 650, 810 A.2d 964. The *515 Court concluded by neatly summarizing the holding in a previous case on the subject, Block v. State:
[In Block, w]e rejected the State’s argument that the District Court was without jurisdiction to revise the guilty verdict because a statutory three-day period in which a verdict may be revised had lapsed before the defendant’s motion for reconsideration was filed. Instead, we emphasized that “jurisdiction” for double jeopardy analysis means jurisdiction in a most basic sense. Merely because there was an error in the exercise of jurisdiction did not mean that the court proceedings were a nullity. Block, 286 Md. at 270 [407 A.2d 320]. An acquittal, whether rendered erroneously or not, has binding effect for double jeopardy purposes. Block, 286 Md. at 272 [407 A.2d 320]. We held that “the fact that the court may not have been authorized under the rules to render the verdict does not make it void for double jeopardy purposes.” Block, 286 Md. at 273 [407 A.2d 320].
Id. (describing Block) (parallel citations omitted). Further, Block explicitly addressed procedural error, highlighting in turn an earlier case where a “juvenile judge had not been authorized under the pertinent statutory provisions or rules to render the adjudication.” Block, 286 Md. at 273, 407 A.2d 320 (citing Parojinog, 282 Md. at 262, 384 A.2d 86). Despite the juvenile judge’s erroneous exercise of jurisdiction and “lack of authority to render a verdict when he did, [the Court of Appeals] went on to point out that the juvenile court nevertheless had subject matter jurisdiction and jurisdiction over the defendant.” Id. (explaining Parojinog). The Block Court explained: “[A]n improper or defective exercise of jurisdiction does not deprive an acquittal of its finality. Instead, as long as the court rendering a non-guilty verdict has jurisdiction over the offense, the verdict is a bar to further criminal proceedings on the same charge.” Id. at 273-74, 407 A.2d 320. Thus, even if there was a procedural defect, I think that a sufficient residue of jurisdiction remained to allow the trial *516 court to grant the judgment of acquittal and for that grant to bar subsequent prosecution.[2]
II.
The majority relies extensively on Harrod v. State, 423 Md. 24, 31 A.3d 173 (2011), but I don’t think that that case supports the majority’s conclusion — especially because of the careful reading that my colleagues give Harrod. In Harrod, the Court of Appeals held that a mistrial in a criminal case creates a “tabula rasa,” a clean slate. Harrod, 423 Md. at 35, 31 A.3d 173. A less discriminating reader of Harrod might argue that it means what it literally says that, after a mistrial, the case returns to the very beginning.
The majority and I agree, however, that Harrod doesn’t mean precisely what it says. See Maj. Op. at 507, 139 A.3d at 1105. Harrod relied on a taxonomy of criminal trials developed by this Court and consisting of five stages:
(1) the accusatory stage resulting in the filing of the indictment, (2) the stage at which any pretrial motions could be filed and resolved, (3) the actual trial on the merits of guilt or innocence, (4) the filing of the State’s Attorney’s notice of intention to proceed under mandatory sentencing procedures, and (5) the sentencing hearing itself.
Hammersla v. State, 184 Md.App. 295, 311, 965 A.2d 912 (2009) (citing Gantt v. State, 73 Md.App. 701, 704, 536 A.2d 135 (1988)). While Harrod talked of a clean slate and a new beginning, what it did was actually different. The case wasn’t sent back to Stage 1, at which time the State would have been required to file a new indictment. Nor was the case sent back to Stage 2 at which pre-trial motions, like Harrod’s motion to suppress, would have been required to be redundantly rear *517 gued. Rather, it was sent back to the beginning of Stage 3 for a new trial. Harrod, 423 Md. at 36, 31 A.3d 173.
Using this framework, the majority suggests that, after Johnson’s Stage 3 mistrial, his case should be returned to Stage 2 for pre-trial procedures. Maj. Op. at 507, 139 A.3d at 1105. I disagree and think instead that Johnson’s case, if it was to be returned at all, should be returned to the beginning of Stage 3 for a new trial. But our disagreement on this point doesn’t really matter. Neither of our positions say anything about the amount or quality of jurisdiction remaining in the court after granting the mistrial. Despite the majority’s reliance, I think Harrod here is a red herring.
III.
A more compelling criticism of my position is that stare decisis ought to preclude reconsideration of a question that we resolved in two prior reported opinions: Malarkey v. State, 188 Md.App. 126, 981 A.2d 675 (2009), and State v. Sirbaugh, 27 Md.App. 290, 339 A.2d 697 (1975). Sirbaugh held that the grant of a mistrial deprived the trial court of jurisdiction to rule on a motion for judgment of acquittal and, therefore, that the grant of the judgment of acquittal was ineffectual and did not create a double jeopardy bar. Sirbaugh, 27 Md.App. at 294, 339 A.2d 697. In Malarkey, this Court declined to overrule Sirbaugh. Malarkey, 188 Md.App. at 162, 981 A.2d 675.
Interestingly, besides being the leading modern case on the question of acquittal after a mistrial, Malarkey is also the leading case discussing the application of the doctrine of stare decisis in this Court. Unfortunately, however, I think Malarkey gets this point wrong too. In Malarkey, we found that stare decisis compelled us to follow the result in Sirbaugh, stating:
“Stare decisis, which means to stand by the thing decided, ‘is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to
*518 the actual and perceived integrity of the judicial process.’ ” Livesay v. Baltimore Cnty., 384 Md. 1, 14 [862 A.2d 33] (2004) (quoting Payne v. Tennessee, 501 U.S. 808, 827 [111 S.Ct. 2597, 115 L.Ed.2d 720] (1991)); State v. Adams, 406 Md. 240, 259 [958 A.2d 295] (2009 [2008]). Its purpose is “ ‘to insure that people are guided in their personal and business dealings by prior court decisions, through the established and fixed principles they announce’ ” Corby v. McCarthy, 154 Md.App. 446, 480 [840 A.2d 188] (2003) (quoting Plein v. Dep’t of Labor, Licensing and Regulation, 269 [369] Md. 421, 435 [800 A.2d 757] (2002)); see also Thompson v. State, 393 Md. 291, 306 [901 A.2d 208] (2006) (“ ‘We are cognizant of the importance of stare decisis and the resulting certainty, definition, and dependability it gives the law.’ ”) (citation omitted). In Livesay, the Court said, 384 Md. at 14-15 [862 A.2d 33]:
The United States Supreme Court has noted that “by the important doctrine of stare decisis ... we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion.” Vasquez v. Hillery, 474 U.S. 254, 265 [106 S.Ct. 617, 88 L.Ed.2d 598] (1986). That Court also explained that stare decisis “permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact.” Id. at 265-66 [106 S.Ct. 617]. While a court has the judicial power to overrule prior cases, courts generally act in a constrained manner to create predictability, “stability and integrity in the law.” McMellon v. United States, 387 F.3d 329, 355 (4th Cir.2004). To be sure, the doctrine of stare decisis does not “preclude us from changing or modifying a common law rule when conditions have changed or that rule has become so unsound that it is no longer suitable to the people of this State.”
Livesay, 384 Md. at 15 [862 A.2d 33]; see also Adams, 406 Md. at 259 [958 A.2d 295] (stating that the “inertial and institutional devotion to stare decisis is not absolute ... for
*519 we will strike down a decision that is ‘clearly wrong and contrary to established principles’ ”) (citation omitted). But, “departure from the rule should be the extraordinary case, especially so when the change will have a harmful effect upon society.” Id. See Bozman v. Bozman, 376 Md. 461, 493 [830 A.2d 450] (2003).
Malarkey, 188 Md.App. at 161-62, 981 A.2d 675 (parallel citations omitted). Malarkey principally relied upon descriptions of the doctrine of stare decisis from supreme courts: the United States Supreme Court and the Court of Appeals of Maryland. While the prudential concerns that apply to those courts apply to us as well, intermediate appellate courts are, and ought to be, even more constrained by additional institutional concerns.
In fact, we follow a more strict version of stare decisis than Malarkey instructs: “A reported decision is a decision by the Court, not a panel, and is not reported unless approved by at least a majority of the members of the Court. Moreover, a reported decision constitutes binding precedent.” Archers Glen Partners, Inc. v. Gamer, 176 Md.App. 292, 325, 933 A.2d 405 (2007) (emphasis in original). Federal courts of appeal follow this same strict form of stare decisis and have all adopted strong “law of the circuit” rules, either by case law or by internal operating rules, which preclude a panel of the circuit from overruling the decision, particularly the reported decision, of another panel of the circuit. See, e.g., Shubargo v. Astrue, 498 F.3d 1086, 1088 n. 1 (10th Cir.2007) (“[W]e remind the [appellee] that we cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.”) (internal quotation omitted); F.D.I.C. v. Abraham, 137 F.3d 264, 268-69 (5th Cir.1998) (“We are, of course, a strict stare decisis court. One aspect of that doctrine to which we adhere without exception is the rule that one panel of this court cannot disregard, much less overrule, the decision of a prior panel.”); 6th Cir. R. 32.1 (“Published panel opinions are binding on later panels.”); Joseph W. Mead, Stare Decisis in the Inferior Courts of the *520 United States, 12 Nev. L.J. 787, 796-800 (2012). Many state intermediate appellate courts have adopted similar rules. See, e.g., Alawad v. Texas, 57 S.W.3d 24, 27 (Tex.Ct.App.2001) (“Until we are told otherwise, we are bound by our prior opinions.”); Wisconsin v. Seeley, 212 Wis.2d 75, 567 N.W.2d 897, 901-02 (Ct.App.1997) (“a decision by [this court] is binding and must be followed as precedent by all other intermediate courts, even if wrongly decided.”). Thus, because of the strict version of stare decisis that applies to this Court, I would hold myself even more firmly bound to follow Malarkey than Malarkey itself instructs.
Despite this, I would still overrule Malarkey and Sirbaugh. Even in a strict stare decisis intermediate appellate court, there is an exception for the intervening decision of the court sitting en banc or by a higher court. See, e.g., United States v. Johnson, 256 F.3d 895, 915-16 (9th Cir.2001) (“Where ... it is clear that a majority of the panel ... made a deliberate decision to resolve the issue, that ruling becomes the law of the circuit and can only be overturned by an en banc court or by the Supreme Court.”); Dir., Office of Workers’ Comp. Programs, U.S. Dep’t of Labor v. Peabody Coal Co., 554 F.2d 310, 333 (7th Cir.1977) (“As a general rule, one panel cannot overrule the precedents set by another panel, absent some intervening factor such as a new controlling decision of the Supreme Court.”); Cole v. Triangle Brick, 136 N.C.App. 401, 524 S.E.2d 79, 81 (2000) (“Where a panel of this Court has decided the same issue, albeit in a different case, a subsequent panel is bound by that precedent, unless it has been overturned by a higher court.”) (internal quotation omitted); 6th Cir. R. 32.1 (“A published opinion is overruled only by the court en banc.”). I think that Malarkey was wrong in failing to appreciate that Sirbaugh had been overruled sub silentio by Court of Appeals cases such as Block and Taylor.
IV.
Our protections against double jeopardy require the State to put on its case against a defendant once and only once. If the evidence that it presents is insufficient to convict, that *521 defendant can never again be charged with the same crime. This is not only necessary for our sense of fairness, it operates to protect us all from a thankfully hypothetical tyrant prosecutor who would bring successive prosecutions until obtaining conviction.
The trial court heard all of the State’s evidence against Michael Johnson and found it insufficient as a matter of law. Its decision to grant the motion for judgment of acquittal is, in my mind, final and conclusive, and, under Maryland’s common law of double jeopardy, it precludes the State from retrying him for this crime. Therefore, I dissent.

. Maryland doesn’t have a state constitutional double jeopardy prohibition. State v. Long, 405 Md. 527, 536, 954 A.2d 1083 (2008) ("Despite the fact that the Maryland Constitution lacks an explicit double jeopardy clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy.”).

. The majority distinguishes Block and Taylor on the basis that they arose in different procedural contexts then does Johnson’s case. Maj. Op. at 510, 139 A.3d at 1107. I find the distinctions unimportant and unpersuasive. More critically, the Court of Appeals has encouraged us to look to "the substance of what occurred and not simply the procedural form.” Wright v. State, 307 Md. 552, 570, 515 A.2d 1157 (1986).